LIBERTY MUTUAL INSURANCE COMPANY, the Knollman Company, Plaintiffs,

v.

AMERICAN PECCO CORPORATION, Peiner Machinen Und Schrauben-verke, Defendants.

Civ. A. No. 218–70.

United States District Court, District of Columbia.

Nov. 30, 1971.

John J. O'Neill, Jr., Washington, D. C., for plaintiff, Liberty Mutual Ins. Co.

Preston C. King, Jr., Washington, D. C., for plaintiff, The Knollman Co.

Denver H. Graham, Washington, D. C., for defendant American Pecco Corp.

James M. Minor, Jr., Richmond, Va., Gerald R. Walsh, Fairfax, Va., for de-fendant Peiner Machinen Und Schraubenverke.

## MEMORANDUM OPINION AND ORDER

GASCH, District Judge.

This matter came on for consideration of a motion by defendant Peiner Machinen Und Schraubenverke to quash service of process. The controversy arises out of the collapse in the District of Columbia of a construction crane manufactured by Peiner, a German corporation; service was made on defendant Peiner by registered mail in March, 1971, under the provisions of the recently enacted "long arm" statute. D.C.Code §§ 13–423 and 13–431 (Supp.1971).

Peiner has launched a three-pronged attack in its motion to quash service. Initially it raises the threshold question of whether the D.C. statute is to be given retrospective effect. The cause of action arose in March, 1969, when the crane collapsed. Suit was filed on January, 1970, the effective date of the statute was February 1, 1971. Peiner was served in March, 1971. While the statute itself is silent as to its applicability to causes of action arising prior to its effective date, jurisdictions which have adopted similar expansive statutes have given them retrospective effect. E. g., Hardy v. Rekab, Inc., 266 F.Supp. 508 (D.Md.1967); Walke v. Dallas, Inc., 209 Va. 32, 161 S. E.2d 722 (1968); Simonson v. International Bank, 14 N.Y.2d 281, 251 N.Y.S. 2d 433, 200 N.E.2d 427 (1964); Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957); See also McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Retrospective application is justified on the grounds that such statutes merely establish a new method of obtaining jurisdiction and effect procedural changes to secure existing substantive rights; the Court concludes that the D.C.Code provision is such a statute and should be given retrospective application in this case.

Peiner's second contention is that the "long arm" statute does not apply to it under the facts of this case. The relevant statutory provision enumerating the bases for *in personam* jurisdiction are as follows:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

(5) * * *

(6) * * *

D.C.Code § 13–423(a) (Supp.1971).

In its motion to quash and accompanying affidavit, Peiner asserts that it has had no contact with the District of Columbia, transacts no business here, and does not derive substantial revenue from goods used here. In this case, the crane was sold by Peiner to American Pecco Corp., a New York corporation; the terms and conditions of the sale were F.O.B. Hamburg, Germany. The Knollman Company, in turn, subsequently entered into a lease-purchase agreement with American Pecco and began using the crane on a construction project in the District of Columbia.

■ When the motion to quash was argued, counsel agreed that if Peiner could be reached under the statute, section 13–423(a) (4) would be the appropriate provision. Peiner contends that the amount of revenue has not been es-tablished to be substantial and that, in any event, it was not derived from goods used in D. C. since its remuneration flowed solely from the sale to American Pecco, which occurred outside this jurisdiction. In the Court's view, this reading of the statute is too narrow. If Peiner's contention that there must be a nexus between the derivation of revenue and the use of the goods in D. C. is correct, it would effectively insulate from the statute any manufacturer who sells to an out-of-state distributor prior to the introduction of the article into the District of Columbia. Clearly this is not the intent of the statutory language. All that is required is that the manufacturer derive substantial revenue from the production and sale of the goods and that the goods be used in the District; to hold otherwise would be to defeat the purpose of the statute.

■ The term "substantial revenue" is not defined in the statute; however, under New York law, which contains a similar provision, the test is a qualitative one, that is, a comparison of the revenue relating to the locally used article and total revenue is required. Gillmore v. J. S. Inskip, Inc., 54 Misc.2d 218, 282 N.Y.S.2d 127 (1967). While there is some dispute as to the precise value of the crane in question, Peiner, in its motion and in response to interrogatories, concedes that during the period 1957 to 1971 it sold to American Pecco, its exclusive distributor, approximately 250 cranes, or approximately 18 cranes per year. Without regard to the precise amounts involved, one crane out of a total annual production of 18 would represent a substantial amount of revenue. Accordingly, the Court finds that there is a basis for *in personam* jurisdiction under Section 13–423(a) (4).

Peiner's final contention is that if the statute be construed to reach it, it would be violative of due process of law. The Court is mindful of the fact that while the territorial sovereignty concept of *in personam* jurisdiction has undergone considerable erosion, the Supreme Court has cautioned that there are outer limits

to the expansion of jurisdiction. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Beginning with the well known case of Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), a line of products liability cases has developed which upholds the imposition of *in personam* jurisdiction over an out-of-state manufacturer who sells to an out-of-state distributor where it is reasonably foreseeable that the product in question will come to rest and may cause injury within the forum state. Peiner's able counsel strenuously argued that this line of authority is apposite only where the product is mass produced and where there is a reasonable expectation of substantial use or consumption within the forum. But the Court reads these cases involving the mass production of goods as providing a permissible basis for imputing to the foreign manufacturer a reasonable expectation of substantial use of the product in the forum state. Protection is thus afforded to the small manufacturer who has no other contact with the forum, who makes an isolated sale to a resident, directly or indirectly, and whose product comes to rest there through a fortuity.

■■ Where, however, there is actual knowledge or an alternative basis for imputing knowledge that the product will be used in the forum, the foreign manufacturer is equally susceptible to *in personam* jurisdiction. See Duple Motor Bodies Ltd. v. Hollingsworth, 417 F.2d 231 (9th Cir. 1969). In the present case Peiner conceded, in response to an interrogatory, that it knew it was selling its cranes to a distributor who did business in the District of Columbia. The Court concludes, therefore, that the constitutional requirement of "minimum contacts" as imposed by International Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95 (1945), and succeeding cases has been satisfied in this case. This conclusion is supported by a case involving virtually identical facts and circumstances, albeit under a slight-

ly different statutory scheme, which held that the imposition of *in personam* jurisdiction was not violative of due process. Benn v. Linden Crane Co., 326 F.Supp. 995 (E.D.Pa.1971). Wherefore, it is by the Court this 30th day of November, 1971,

Ordered that defendant Peiner's motion to quash service be and the same is hereby denied.