Mary L. AIKEN, Plaintiff,

v.

LUSTINE CHEVROLET, INC., and
Lawrence Zapol, Defendants.

Civ. A. No. 74–1665.

United States District Court,
District of Columbia.

March 26, 1975.

Leonard J. Koenick, Washington, D. C., for plaintiff.

Gerard E. Mitchell, Washington, D. C., for defendant Lustine.

Howard M. Rensin, Hyattsville, Md., for defendant Zapol.

## MEMORANDUM–ORDER

GASCH, District Judge.

This matter is before the Court on the motions of both defendants to dismiss for lack of personal jurisdiction and for *forum non conveniens*. Defendant Zapol asks, in the alternative, that service be quashed as to him.

### I. *The Claim.*

Plaintiff Mary L. Aiken is a resident of the District of Columbia. She alleges that defendant Lawrence Zapol, a salesman for defendant Lustine Chevrolet, Inc., falsely and fraudulently represented to her that she could purchase a new car from Lustine Chevrolet with the right to return the car within 10 days of the purchase date if she were not fully satisfied therewith. She alleges that this misrepresentation was made with the full knowledge of defendant Lustine.

In reliance on the false statement, she traded in her 1970 auto and purchased a 1973 auto. She was not, however, satisfied with the new car and attempted to return it within 10 days of the date of purchase. Lustine refused to permit the return of the 1973 car. Her claim here is based on the actions of Zapol, acting as Lustine's agent, or (alternatively) on Lustine's negligent training and supervision of Zapol. The action thus sounds in tort.

Lustine Chevrolet is a Maryland corporation located in Hyattsville, Maryland.[1] Zapol is a Maryland resident. The subject matter jurisdiction of this Court is based on 28 U.S.C. § 1332 (1970) (diversity of citizenship).[2] Plaintiff asserts personal jurisdiction over both defendants on the basis of D.C. Code Ann. § 13–423 (1973). This is the "long-arm" statute of the District of Columbia.

### II. *Personal Jurisdiction.*

#### A. *The Legal Framework.*

An analysis of the "long-arm's" reach usually has two levels. The first of these concerns whether the terms of the statute are met. The second explores whether, assuming the conditions of the statute itself are fulfilled, the would-be defendant has sufficient contacts with the jurisdiction of the plaintiff's forum as to make the assertion of jurisdiction over him constitutionally permissible. Here, however, defendant Lustine has conceded that—if the terms of the statute are met—it has such contact with the District of Columbia as to permit an assertion of personal jurisdiction over it.[3] Resolution of the question before the Court, therefore, turns solely on an interpretation of the local long-arm statute.

---

1. Hyattsville is a suburb of Washington, D. C., and is but a few miles beyond the Maryland-District of Columbia border.

2. There is no question but that the jurisdictional amount is met herein.

3 Zapol makes no such concession; but, as will be seen, it is not necessary for the Court to go beyond the first level of analysis in regard to him.

### B. *Defendant Lustine.*

Plaintiff urges that two sections of the statute support the assertion of jurisdiction over Lustine.[4] The first of these two subsections [5] provides that jurisdiction may be asserted over one who has contracted to supply goods and services in the District of Columbia.[6] The second subsection [7] provides for jurisdiction over one who causes tortious injury in the District of Columbia by acts or omissions outside the District. The Court has jurisdiction if the putative tortfeasor "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." [8]

Lustine is a local car dealership. As such, it advertises heavily in the District of Columbia and makes sales to persons who are residents of that jurisdiction. There can be but little doubt that Lustine solicits business in the District of Columbia and derives substantial revenues from goods used or consumed there. Two questions, however, remain.

The first of these is the impact of D.C.Code Ann. § 13–423(b) (1973), which reads as follows:

> When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

The quoted language, when read in conjunction with D.C.Code Ann. § 13–423(a)(4) (1973), would at first glance seem to indicate that jurisdiction is appropriate only if the tortious injury alleged resulted from the doing or soliciting of business in the District, the use or consumption of goods in the District or some other persistent course of conduct in the District. Despite its apparent logic, however, such an interpretation is not correct.

The long-arm statute of the District of Columbia is, where possible, to be interpreted and construed so as to make it uniform with the laws of those jurisdictions which enact in comparable form the first two articles of the Uniform Interstate and International Procedure Act.[9] The Commissioners' Notes to that Uniform Act, however, state, in relevant part:

> It should be noted that the regular solicitation of business or the persistent course of conduct required by section 1.03(a)(4) [D.C.Code Ann. § 13–423(a)(4) (1973)] *need have no relationship to the act or failure to act that caused the injury.* No distinctions are drawn between types of tort actions.

> In sustaining the exercise of jurisdiction . . . the courts have often emphasized that the defendants had *contacts with the state that bore no relation to the particular tort.*[10]

Thus the interpretation favored by the drafters of the Uniform Act belies the apparent meaning of D.C.Code Ann. § 13–423(b). It is abundantly clear that the position of the Commissioners, quoted above, has been adopted in this Circuit.[11] It is equally clear that, under the interpretation of the statute which exists in this Circuit, the Court may assert jurisdiction over Lustine.

---

4. D.C.Code Ann. § 13–423(a)(2), (4) (1973).

5. *Id.* § 13–423(a)(2).

6. Plaintiff asserts that Lustine did so contract because: (1) it allegedly agreed to collect excise tax (on the new car sale) from the plaintiff and pay over to the District of Columbia the monies so collected and (2) it agreed to obtain title and registration for the plaintiff from the District of Columbia.

7. D.C.Code Ann. § 13–423(a)(4) (1973).

8. *Id.*

9. *Id.* § 13–402. The local act is taken, with but slight change, from the Uniform Act.

10. Uniform Interstate and International Procedure Act, § 1.03(a)(4), 9B Uniform Laws Ann. 307, 312 (Commissioners' Notes) (1966) (emphasis added).

11. Margoles v. Johns, 157 U.S.App.D.C. 209, 213, 483 F.2d 1212, 1216 (1973), aff'g, 333 F.Supp. 942, 945 (D.D.C.1971) (Pratt, J.).

■ Lustine, however, vigorously contends that it has not caused tortious injury *in* the District of Columbia. Any such injury, Lustine asserts, must have occurred in Maryland at the time of any fraudulent misrepresentations or when it refused to accept the return of the car. Thus, says Lustine, the case is vastly different from Liberty Mutual Insurance Co. v. American Pecco Corp.[12] and quite similar to Norair Engineering Assoc., Inc. v. Noland Co.[13] *Liberty Mutual* involved a construction crane made by a German firm which sold it to a firm in New York which in turn furnished it to another firm (on a lease-purchase basis) for use in the District. The crane collapsed here, causing substantial damage to an adjacent building. The Court held that there was tortious injury here. The *Norair* case, on the other hand, involved the failure in West Virginia of certain flawed tubing which Norair was required to replace. ·No business of any sort was transacted here. Norair's principal place of business, however, was here. Plaintiff in *Norair* alleged that it had sustained injury here because it had to borrow money here and reach into corporate reserves here in order to replace the tubing. The Court did not view this as a tortious injury within the terms of the long-arm statute.

■ The District of Columbia's long-arm statute does not attempt to pierce the murky metaphysics of the nature of a "tort" and does not try to ascertain where a tort is incurred. Instead, it distinguishes sharply between the act or omission which produces the injury and the injury itself.[14] This, however, is not the only distinction which must be made. One must also distinguish between the injury suffered and any pecuniary losses, which are merely one measure of

such an injury. It was this distinction that the Court made in *Liberty Mutual* and in *Norair*. It is this distinction that Lustine ignores here.

In *Liberty Mutual*, the injury was sustained when and where the defective crane collapsed. Hence the Court held as it did. In *Norair*, the injury was sustained when and where the defective tubing failed and had to be replaced—in West Virginia. All that occurred in the District of Columbia were mere bookkeeping transactions regarding the funds necessary to pay for the replacement of the tubing. In *Norair*, then, the injury was in West Virginia; only the measure of the injury was here.

In the case at bar, plaintiff claims injury to her credit rating here and to her mental and emotional well-being. Such alleged injuries could only have been sustained in the District of Columbia. The case is thus clearly distinguishable from *Norair*. It seems to the Court, therefore, that it may assert personal jurisdiction over Lustine pursuant to D. C.Code Ann. § 13–423(a)(4) (1973). The Court need not consider the other jurisdictional head urged by plaintiff.

### C. *Defendant Zapol.*

■ Plaintiff makes much the same arguments regarding Zapol as she made regarding Lustine. Zapol, however, is sued in his individual capacity. The actions by which Lustine did or solicited business *or engaged in other activities* in the District were not shared by Zapol as an individual. The record is absolutely devoid of any showing that Zapol, as an individual, had any contacts whatsoever with the District of Columbia. In these circumstances, there is no basis for this Court to assert personal jurisdiction over defendant Zapol.[15] This resolution makes unnecessary any con-

---

12. 334 F.Supp. 522 (D.D.C.1971).

13. 365 F.Supp. 740 (D.D.C.1973).

14. Margoles v. Johns, 157 U.S.App.D.C. 209, 214–17, 483 F.2d 1212, 1217–20 (1973). *Margoles* dealt with D.C.Code Ann. § 13–423(a)(3) (1973); but the language of that

provision is so similar (in material part) to that of § 13–423(a)(4) as to leave no doubt but that the analysis put forth by *Margoles* would apply equally to that latter subsection.

15. *See* Security Bank, N. A. v. Tauber, 347 F.Supp. 511, 516 (D.D.C.1972).

sideration of the further points raised by Zapol.

### III. *Forum non conveniens.*

The Court now turns to Lustine's request that this case be dismissed on grounds of forum non conveniens. Defendant points to D.C.Code Ann. § 13–425 (1973) as authorizing this Court to dismiss a case on such grounds. That section reads:

> When any District of Columbia court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss such civil action in whole or in part on any conditions that may be just.[16]

The Court doubts the applicability of the cited statute,[17] but will treat the motion as one directed to its inherent powers in such matters.

■ It is well-settled in this jurisdiction that a plaintiff's choice of forum is rarely to be disturbed.[18] Where strictly private interests are concerned, plaintiff's choice will not be upset unless the balance of convenience is strongly in favor of the defendant.[19] Despite Lustine's contentions, such is not the case here.[20] The use of a court, however, necessarily involves some question of public interest;[21] and it is to this question that the Court now turns.

■ Here the Court must look at various factors such as court congestion, jury usage and the like. It must also note the relationship, if any, of the forum jurisdiction to the plaintiff and weigh the advantages of having the issues at the bar tried before it rather than elsewhere.[22] Here, the plaintiff has intimate ties with the District of Columbia, of which she is a resident. Here she suffered her alleged injuries, including that alleged to her credit rating. This District itself, of course, has an interest in the resolution of such issues concerning one of its residents.

The scales are thus weighed heavily in favor of the plaintiff's choice of forum. The present state of the Court's docket is not such as to militate against the filing of a civil case such as this. The Court can, if necessary, apply the appropriate state law (as it has often done in

---

**16.** It is not clear to the Court why defendant thinks that the statute in question has application to this Court. Section 13–425 refers to "any District of Columbia court," but does not there define the phrase. In another place, however, the Code says:

The judicial power in the District of Columbia is vested in the following courts:

(1) The following Federal Courts established pursuant to article III of the Constitution:

\* \* \* \* \*

(C) The United States District Court for the District of Columbia.

(2) The following District of Columbia courts established pursuant to article I of the Constitution:

(A) The District of Columbia Court of Appeals

(B) The Superior Court of the District of Columbia.

D.C.Code Ann. § 11–101 (1973).

This Court, therefore, would appear to be a Federal Court in and for the District of Columbia rather than a District of Columbia court.

This Court has, of course, inherent powers regarding *forum non conveniens* matters;

but its powers are those inherent in Federal courts generally, unaffected by the statute in question.

**17.** *See* note 16, *supra.*

**18.** Gross v. Owen, 95 U.S.App.D.C. 222, 223, 221 F.2d 94, 95 (1955).

**19.** *Id.*

**20.** Lustine says that all witnesses are in Maryland and that Maryland law will be applied. It itself is a Maryland firm. The witnesses, however, would find it just as easy to come here as to go to any appropriate forum in Maryland. We are not, after all, dealing with vast distances. Instead, we have a relatively compact and closely interrelated metropolitan area. It goes without saying that plaintiff's convenience is best served by a forum here. The balance in this case is by no means greatly in defendant's favor.

**21.** Gross v. Owen, 95 U.S.App.D.C. 222, 223, 221 F.2d 94, 95 (1955).

**22.** *Id. See* Nee v. Dillon, 99 U.S.App.D.C. 332, 333–34, 239 F.2d 953, 954–55 (1956); Frost v. Peoples Drug Stores, Inc., 327 A.2d 810 (D.C.App.1974).

the past). In short, there is nothing to counterbalance the interests served by retaining the case here.[23]

Accordingly, it is by the Court this 26th day of March, 1975.

Ordered that the motion of defendant Zapol to dismiss this action for lack of personal jurisdiction over him be, and the same hereby is, granted; and it is further

Ordered that this case be, and it hereby is, dismissed as to defendant Zapol; and it is further

Ordered that the motion of defendant Lustine Chevrolet to dismiss this action for lack of personal jurisdiction over it be, and the same hereby is, denied; and it is further

Ordered that the alternative motion of defendant Lustine Chevrolet to dismiss this action on grounds of *forum non conveniens* be, and the same hereby is, denied.

23. The case might have been different if the parties were all from other jurisdictions. *See* cases cited notes 21 and 22 *supra.*