Wyllie **GATEWOOD**, Appellant,

v.

**FIAT, S. p. A.,** et al.

No. 78–1578.

United States Court of Appeals, District of Columbia Circuit.

Argued May 8, 1979.

Decided Jan. 24, 1980.

---

Gerard E. Mitchell, Washington, D. C., for appellant.

R. Kenly Webster, Washington, D. C., for appellee.

Before BAZELON, Senior Circuit Judge, and McGOWAN and ROBB, Circuit Judges.

Opinion for the Court filed by Circuit Judge McGOWAN.

McGOWAN, Circuit Judge:

This appeal is from the dismissal of a diversity suit arising out of an automobile accident in the District of Columbia. Appellant Gatewood is a Maryland resident. He sued Fiat, S.p.A. (Fiat), an Italian auto manufacturer, and Fiat Motors of North America, Inc. (Fiat Motors), Fiat's United States distributor. The District Court dismissed the action because it found that the District of Columbia's "long-arm" statute did not permit personal jurisdiction over the defendants and, in any event, that the District of Columbia could not exercise jurisdiction over the defendants without violating constitutional due process requirements. We reverse.

I

Appellant in 1976 purchased a used Fiat automobile from a Virginia resident. On October 23, 1976, appellant drove the car to visit his son, who lives in the District. While in the District, appellant's car collided with another automobile. Because of an alleged defect in the Fiat's latch system, the door flew open and appellant was thrown from the car. Gatewood was taken by ambulance to a hospital in the District where he was treated for serious injuries.

Appellant sued Fiat and Fiat Motors[1] in the District Court under theories of strict liability, breach of implied warranty, and negligence. Fiat is an Italian corporation. It manufactures and sells its automobiles in Italy to Fiat Motors, a New York corporation, which has its principal place of business in New Jersey. Fiat Motors imports the cars and sells them to American franchised dealers, which in turn sell to consumers. Neither Fiat nor Fiat Motors has offices, agents, or franchised dealers in the District of Columbia proper,[2] but fourteen Fiat sales or service agencies are located nearby.

Appellant asserted that both Fiat and Fiat Motors were subject to suit in the District Court under the District of Columbia "long-arm" statute.[3] Both Fiat and

---

1. Fiat Motors is the successor to Fiat Motor Company, Inc., Fiat-Roosevelt Motors, Inc., and Fiat Distributors, Inc. All three predecessor companies are also named as defendants, but none apparently now exists.

2. Manhattan Auto Sales, a franchisee of Fiat-Roosevelt Motors, Inc., sold and serviced Fiat automobiles in the District until 1968.

3. The District Court in this diversity action correctly looked to the jurisdictional statute of the District of Columbia. *See Forsythe v. Overmyer,* 576 F.2d 779, 782 (9th Cir.), *cert. denied,* 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978); *Mack Trucks, Inc. v. Arrow Aluminum*

Fiat Motors moved to dismiss the action for lack of personal jurisdiction.

Appellant meanwhile served interrogatories on the appellees concerning their advertising and sales of automobiles in the Washington, D.C., area. The appellees answered most of the questions, but said they did not have enough information at hand immediately to answer questions about recent Fiat advertising. Before appellees answered the latter questions, the District Court dismissed the complaint as to each defendant for lack of personal jurisdiction.[4]

The District Court noted, with respect to the District of Columbia "long-arm" statute:

> [I]t is not at all clear to the Court that defendants have the requisite relationship with the District of Columbia so as to come within the ambit of § 13–423(a)(4).
>
> .  .  .
>
> [T]his Court is not persuaded on the record before it that in terms of number of transactions, amount of revenue earned, or percentage of sales, defendants' revenue from goods used in the District of Columbia is "substantial."

*Gatewood v. Fiat, S.p.A.,* No. 78–0277, mem. op. at 2–3 (D.D.C. April 21, 1978).

The District Court further held that defendants' contacts with the District of Co-

---

*Castings Co.,* 510 F.2d 1029, 1031 (5th Cir. 1975).

The District of Columbia "long-arm" statute, D.C.Code § 13–423 (1973), provides:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

---

lumbia were insufficient to satisfy constitutional due process requirements:

> [D]efendants' ties with the District of Columbia are insubstantial, the District of Columbia has no governmental interest to enforce the obligations asserted by plaintiff, and .  .  . subjecting defendants to service of process and personal jurisdiction herein would not be reasonable and just according to traditional concepts of fair play and substantial justice. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 320 [, 66 S.Ct. 154, 90 L.Ed. 95] (1945).

*Id.* at 3.

■ We first determine whether the District of Columbia "long-arm" statute permits the exercise of jurisdiction over appellees. If so, we then inquire whether the exercise of jurisdiction over appellees comports with constitutional due process requirements. *Forsythe v. Overmyer,* 576 F.2d 779, 782 (9th Cir.), *cert. denied,* 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978).

## II

■ In asserting that the District of Columbia had jurisdiction over Fiat and Fiat Motors, appellant invoked the District's "long-arm" statute, *quoted in full in* note 3 *supra.* Relevant here is the following provision:

(5) having an interest in, using, or possessing real property in the District of Columbia; or

(6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing.

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

4. The District Court dismissed the case because it found that the District of Columbia could not, consistent with due process, exercise personal jurisdiction over appellees. The District Court did not explicitly dismiss on the alternative ground that the District of Columbia "long-arm" statute does not reach appellees, but we treat its decision as a dismissal both on the statutory ground and on the constitutional ground.

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

\* \* \* \* \* \*

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia[.]

\* \* \* \* \* \*

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C.Code § 13–423 (1973).[5]

Appellees argue that section 13–423(b) prevents the District of Columbia from exercising jurisdiction in this case. They contend that subsection (b) requires that the injury prompting the lawsuit result from (1) the actual solicitation of business, (2) persistent course of conduct, or (3) derivation of substantial revenue, in the District.

There is no merit to this reading of the statute. One who invokes section 13–423(a)(4) need not show that the injury in the District was directly related to the actual business solicitation, course of conduct, or derivation of revenue. Where jurisdiction is based on subsection (a)(4), subsection (b) requires only that the claim for relief arise out of an *injury* occurring in the District.

Both the legislative history of the statute, and cases decided under it, make this plain. We examine each in turn.

---

**5.** The term "person" in section 13–423 includes "a corporation, partnership, association, or any other legal or commercial entity, whether or not a citizen or domiciliary of the District of Columbia and whether or not organized under the laws of the District of Columbia." D.C. Code § 13–421 (1973).

**6.** *M. A. S., Inc. v. Van Curler Broadcasting Corp.,* 357 F.Supp. 686, 690 (D.D.C.1973); *see*

---

## A

Congress derived section 13–423 from the Uniform Interstate and International Procedure Act. *See* H.R.Rep.No.907, 91st Cong., 2d Sess. 61 (1970); S.Rep.No.405, 91st Cong., 1st Sess. 35 (1969). The Commissioner's Note accompanying the Uniform Act states that

the regular solicitation of business or the persistent course of conduct required by section 1.03(a)(4) [D.C.Code § 13–423(a)(4)] *need have no relationship to the act or failure to act that caused the injury.*

13 Uniform Laws Ann. 285, 287 (Master ed. 1975) (emphasis added).

We are inclined to give considerable weight to the intentions of the Uniform Act drafters, because the Uniform Act was the genesis of the District's statute. Lest there remain doubt about the matter, however, we next consider how courts have interpreted section 13–423.

## B

■ Principles of federalism bind us in diversity cases to follow the District of Columbia Court of Appeals' interpretation of the District of Columbia jurisdictional statute.[6] However, no decision of that court is on point.

Decisions of the federal courts applying the law of the District of Columbia are in accord with the Note accompanying the Uniform Act. The District Court in *Aiken v. Lustine Chevrolet, Inc.,* 392 F.Supp. 883, 885 & n. 11 (D.D.C.1975), found it "abundantly clear" that the solicitation of business, persistent course of conduct, or derivation of substantial revenue, need have no

---

*Erie Ry. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The District of Columbia Court Reorganization Act of 1970, Pub. L.No.91–358, § 111, 84 Stat. 473, 475 (1971), *codified in* D.C.Code § 11–102 (1973), established the District of Columbia Court of Appeals as the "highest court of the District of Columbia."

relation to the injury. *Id.* at 885. *See Margoles v. Johns,* 157 U.S.App.D.C. 209, 483 F.2d 1212, 1215–16 (D.C.Cir.1973), *aff'g* 333 F.Supp. 942 (D.D.C.1971); *Security Bank, N.A. v. Tauber,* 347 F.Supp. 511, 515 (D.D.C.1972); *Liberty Mutual Insurance Co. v. American Pecco Corp.,* 334 F.Supp. 522 (D.D.C.1971).

We have discovered no case that leads us to believe that the District of Columbia courts would interpret subsection (a)(4) other than as the federal courts have done.[7] The District of Columbia Court of Appeals, in construing another section of the District's "long-arm" statute, acknowledged that the statute was based on the Uniform Act, and cited with approval the Commissioners' Note accompanying the Uniform Act. *Cohane v. Arpeja-California, Inc.,* 385 A.2d 153, 159 (D.C.Ct.App.) (construing section 13–423(a)(1)), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978).

We note, finally, that a recent case of the Superior Court of the District of Columbia has interpreted the requirements of subsection (a)(4) exactly as we interpret them today. *Dallmus v. Fiat Motors of North America, Inc.,*[8] No. 6617–78 (D.C.Super.Ct. April 30, 1979). In *Dallmus,* Judge Ugast held: "[A] defendant may be subject to jurisdiction in the District of Columbia under § 13–423(a)(4) even though its contacts with the District bear no relation to the particular tort in issue." *Id.,* mem. op. at

6.[9] We are not literally bound by decisions of lower District of Columbia courts. *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *King v. Order of United Commercial Travelers,* 333 U.S. 153, 161, 68 S.Ct. 488, 92 L.Ed. 608 (1948). We do, however, give "proper regard" to pertinent lower court decisions in determining the law of the District of Columbia. *See Commissioner v. Estate of Bosch,* 387 U.S. at 465, 87 S.Ct. 1776.

■ In light of (1) this interpretation of the District of Columbia law by a District of Columbia judge, (2) the legislative history of subsection (a)(4), and (3) federal court cases applying that subsection, we hold that a person alleged to have caused tortious injury by an act or omission outside the District is subject to jurisdiction in the District under subsection (a)(4), if the defendant:

(1) regularly does or solicits business in the District of Columbia;

(2) engages in any persistent course of conduct in the District; or

(3) derives substantial revenue from goods used or consumed, or services rendered, in the District,

*and* if the claim arises out of an injury occurring in the District.[10]

---

**7.** Appellees argue that *Berwyn Fuel, Inc. v. Hogan,* 399 A.2d 79 (D.C.Ct.App.1979), establishes that section 13–423(b) requires that the lawsuit arise out of defendants' acts of soliciting business, engaging in a persistent course of conduct, or deriving substantial revenue, in the District of Columbia. *Berwyn Fuel* is inapposite by its own terms because that case dealt with subsection (a)(1) of the "long-arm" statute, not subsection (a)(4). *Id.* at 80–81 n. 2. The Court of Appeals in *Berwyn Fuel* appeared to recognize in dictum that *Aiken, supra,* correctly explained the rule governing cases under subsection (a)(4).

**8.** Because the *Dallmus* defendants were the same as defendants here, we find that case highly relevant to our decision today, and rely on it both here and elsewhere in this opinion.

**9.** Before a trial on the merits in *Dallmus,* Fiat and Fiat Motors each sought review of their jurisdictional arguments in the District of Co-

lumbia Court of Appeals. Each defendant filed notice of appeal, and in the alternative, petitioned for mandamus to compel the Superior Court to grant its motion to dismiss. The Court of Appeals on August 30, 1979, dismissed the appeals and denied the petitions for mandamus. The case therefore returned to the Superior Court for a trial on the merits. Because the appeal and petition for mandamus sought interlocutory relief before a final judgment had been entered, the denial of relief by the Court of Appeals apparently was without prejudice. Thus, it apparently remains open to Fiat and Fiat Motors to make their jurisdictional arguments to the District of Columbia Court of Appeals if a final judgment later should be entered against them.

**10.** *Accord, Aiken v. Lustine Chevrolet, Inc.,* 392 F.Supp. 883, 885 n. 11 (D.D.C.1975).

## III

We will focus our inquiry on whether Fiat and Fiat Motors derived substantial revenue from the sale of goods used in the District of Columbia, and therefore are subject to jurisdiction in the District under section 13–423(a)(4).

■ When Judge Ugast for the District of Columbia Superior Court recently adjudicated precisely this issue, he held that both Fiat and Fiat Motors were subject to jurisdiction in the District. *Dallmus v. Fiat Motors of North America, Inc.,* No. 6617–78 (D.C.Super.Ct. April 30, 1979); *see* section II–B *supra.* Our examination of the record before us, especially in light of the defer-ence [11] due Judge Ugast's interpretation of District of Columbia law,[12] requires us to hold that each derives substantial revenue from sales of Fiat automobiles that eventually are used in the District of Columbia. Each company therefore is subject to the reach of the District's "long-arm" statute in a lawsuit arising out of an automobile accident in the District.[13]

Fourteen Fiat dealerships and service agencies ring the Washington, D.C., area. The record reveals that somewhat less than 2% of Fiat Motors' revenue was produced by sales in the Washington area,[14] but it does not reveal precisely how many of these cars were used in the District of Columbia

11. *See* section II–B *supra.* We do not base our decision on the *collateral estoppel* effect of Judge Ugast's decision in *Dallmus.* Appellant Gatewood was not a party in *Dallmus,* and he therefore could not have been bound by collateral estoppel had Judge Ugast resolved the jurisdictional issue in favor of Fiat and Fiat Motors. We could give collateral estoppel effect to the decision in *Dallmus* only by abrogating the principle of mutuality, which requires that a party may invoke a prior adjudication as preclusive only if that party would have been bound by the prior adjudication had it been resolved adversely. There is substantial support for abolishing the mutuality requirement for collateral estoppel. *See, e. g., Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326–33, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Bernhard v. Bank of America,* 19 Cal.2d 807, 122 P.2d 892 (1942). *See generally* Currie, *Civil Procedure: The Tempest Brews,* 53 Calif.L.Rev. 25, 37 (1965). However, the District of Columbia courts appear to require mutuality. *See In re Coffey,* 390 A.2d 446, 448 (D.C.Ct.App.1978); *Usher v. 1015 N Street, N. W., Cooperative Ass'n,* 120 A.2d 921 (D.C.Mun.App.1956). Abrogation of the mutuality requirement in the District of Columbia, if it is to occur, must be done by the District of Columbia courts, not by federal courts applying local law in a diversity action.

12. Judge Ugast in *Dallmus* had before him a more complete record on the issue of appellees' contacts with the District of Columbia than did the District Court in this case. *See Dallmus v. Fiat Motors of North America, Inc.,* No. 6617–78, mem. op. at 5 (D.C.Super.Ct. April 30, 1979).

13. We do not decide whether the magnitude of appellees' business *solicitation* in the District also is a basis for obtaining personal jurisdic-tion. The record before us on that point is incomplete, although Fiat advertisements in national newsmagazines sold in the District appear in the record. The District Court dismissed this case before discovery on the business-solicitation issue was completed. We note in passing that additional discovery might have revealed more examples of Fiat advertising in the District of Columbia. For example, Fiat Motors recently purchased the following quarter-page advertisement in the Washington Post:

> TEST–DRIVE A FIAT STRADA AND HELP THE DRIVE AGAINST MUSCULAR DYSTROPHY.
>
> Join your Washington, D. C., Fiat dealer in the annual Jerry Lewis Telethon for the fight against Muscular Dystrophy. Now through Labor Day, we'll donate $1 for each licensed driver who visits us . . . . .
>
> \* \* \* \* \* \*
>
> AT YOUR PARTICIPATING WASHINGTON, D.C. FIAT DEALERS

In addition to this textual material, the advertisement contained the following emblem:

Washington Post, September 2, 1979, at A6, cols. 4–6.

14. A.30. The record in a virtually identical case revealed that about 1.5% of the new Fiats sold each year in the U.S.—worth about $3.3 million—were registered in the District of Columbia. *Dallmus v. Fiat Motors of North America, Inc.,* No. 6617–78, mem. op. at 4 (D.C. Super.Ct. April 30, 1979).

proper, as opposed to the suburbs. Appellees concede—and common sense demands that we recognize—that many of these new cars were used in the District.

These sales totals are more than adequate to support the conclusion that appellees obtained "substantial revenue" from sales of automobiles used in the District of Columbia. *Dallmus v. Fiat Motors of North America, Inc.,* No. 6617–78 (D.C.Super.Ct. April 30, 1979).[15]

■ Other cases also make clear that the magnitude of Fiat auto sales in the Washington, D.C., area amply justify personal jurisdiction over appellees in the District. *See Founding Church of Scientology v. Verlag,* 175 U.S.App.D.C. 402, 406, 536 F.2d 429, 433 (D.C.Cir.1976) (revenue in excess of $26,000 for a ten-month period—approximately 1% of the company's total gross revenue—held to be "substantial"); *Liberty Mutual Insurance Co. v. American Pecco Corp.,* 334 F.Supp. 522, 524 (D.D.C.1971) (yield from sale of one crane, out of the company's total annual production of 18 cranes, produced "substantial revenue"). It is also true that "a small *percentage* of the sales of a corporate giant may indeed prove substantial in an *absolute* sense." *Ajax Realty Corp. v. J. F. Zook, Inc.,* 493 F.2d 818 (4th Cir. 1972) (emphasis added), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2148, 36 L.Ed.2d 687 (1973). These and other precedents indicate that the Fiat automobiles sold and used in the District of Columbia area—worth more than $3 million annually, and constituting about 1.5% of the total volume of Fiat sales in the United States—do produce "substantial revenue."

Appellees, however, reject this analysis. They point out, correctly, that Fiat sells automobiles only in Italy, and that Fiat Motors sells no automobiles to dealers located in the District of Columbia proper. Appellees contend that sales by *dealerships* in the Washington, D.C., suburbs cannot justify jurisdiction over the *manufacturer* and *distributor,* because Fiat and Fiat Motors are only indirect sellers of the automobiles that find their way into the District.

■ That the sales are indirect is irrelevant, we think. The plain language of the statute makes this clear. The statute permits jurisdiction where the defendant "derives substantial revenue from goods *used* . . . in the District of Columbia." D.C.Code § 13–423 (a)(4) (1973) (emphasis added). The statute does not require that the goods be *sold* in the District of Columbia.

We hold, therefore, that jurisdiction over Fiat and Fiat Motors in the District of Columbia is permitted by the District's "long-arm" statute.

IV

■ Appellees next rely on the District Court's holding that the District of Columbia constitutionally cannot assert jurisdiction in this case. Appellees point out that they have no offices in the District of Columbia, that appellant is not a resident of the District, and that the Fiat automobile at issue in this case is not registered here. We are told, therefore, that the District lacks a "manifest interest" in this litigation, *Hanson v. Denckla,* 357 U.S. 235, 252, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and that assertion of jurisdiction under the District of Columbia "long-arm" statute thus violates the due process clause of the Constitution.

We hold that the exercise of jurisdiction in this case comports with due process. As we have seen, D.C.Code section 13–423 permits the exercise of jurisdiction in cases such as this if two conditions are fulfilled. First, the injuries must have occurred in the District. Second, defendant's conduct must reveal certain ties to the District, based on, *inter alia,* solicitation of business or production of revenue. *See* note 3 *supra.* The requirement that the injury must have occurred in the District recognizes the District's interest in preventing defective products from crossing its borders and causing

---

**15.** For a description of the current status of proceedings in *Dallmus,* see note 9 *supra.*

injury on its roads, or in its work places or dwellings. Moreover, (1) the witnesses to the accident may be residents of the District, (2) appellant was treated in a District hospital, and (3) District police officers investigated the accident. That the appellant is not a District resident, and that this automobile is not registered here, do not negate these interests in providing a forum for this litigation.

Some cases support the view that a state constitutionally might be able to assert jurisdiction in tort actions even when the tortious injury that is the subject of the litigation is the defendant's only contact with the forum state. *See Ajax Realty Corp. v. J. F. Zook, Inc.,* 493 F.2d 818, 822 (4th Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2148, 36 L.Ed.2d 687 (1973); *Reilly v. Phil Tolkan Pontiac, Inc.,* 372 F.Supp. 1205 (D.N.J.1974); *Duignan v. A. H. Robins Co.,* 98 Idaho 134, 559 P.2d 750 (1977); *State ex rel. Deere & Co. v. Pinnell,* 454 S.W.2d 889 (Mo.1970); Comment, *In Personam Jurisdiction Over Nonresident Manufacturers in Product Liability Actions,* 63 Mich.L.Rev. 1028, 1031–32 (1965). *But see Uppgren v. Executive Aviation Services, Inc.,* 304 F.Supp. 165 (D.Minn.1969); *Pellegrini v. Sachs & Sons,* 522 P.2d 704 (Utah 1974).

We need not pronounce on that broad principle, however. This case, as we have seen, is not one in which jurisdiction is based only on the occurrence of a tortious injury within the District of Columbia. Appellees have contacts with the District independent of the accident. Fiat and Fiat Motors each knew that many of the automobiles they sold would be used in the District of Columbia, and they derived substantial revenue from sales of those automobiles. Under these circumstances the exercise of jurisdiction in this case undoubtedly comports with due process.[16]

 We reverse because the District Court erred in dismissing the action for lack of personal jurisdiction over Fiat and Fiat Motors. The case is remanded to the District Court for further proceedings consistent with this opinion.[17]

*It is so ordered.*

---

16. Appellants cite two cases that were dismissed notwithstanding defendants' substantial contacts with the forum because, *inter alia,* the *plaintiffs* had no connection with the forum. *See Ratliff v. Cooper Labs, Inc.,* 444 F.2d 745 (4th Cir.), *cert. denied,* 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 2652 (1971); *Seymour v. Parke, Davis & Co.,* 423 F.2d 584 (1st Cir. 1970). These cases do not aid appellees, however, because they involved causes of action that did not arise in the forum state.

17. By dismissing for lack of capacity to exercise personal jurisdiction the District Court pretermitted the issue whether Fiat, S.p.A., had been validly served with process. The complaint was served on Fiat Motors, which is Fiat, S.p.A.'s, designated agent for service of process under the Motor Vehicle Safety Act of 1966. We do not decide here whether this manner of service was valid. Resolution of that issue in the first instance is a matter for the District Court on remand.