Lakie Ray **FOGLE, Jr., et al., Plaintiffs,**

v.

**RAMSEY WINCH CO., INC.,
et al., Defendants.**

**Civ. A. No. 91–866 (CRR).**

United States District Court,
District of Columbia.

Sept. 20, 1991.

James M. Schuette, Jr., Washington, D.C., for plaintiffs.

Brien Anthony Roche of Johnson & Roche, McLean, Va., and Kenneth Gory Roth and Melvin Randolph Wright of Montedonico, Hamilton, Altman & Nash, Fairfax, Va., and Washington, D.C., for defendants.

**MEMORANDUM OPINION**

CHARLES R. RICHEY, District Judge.

Before the Court is the defendant Ramsey Winch Co.'s ("Ramsey") Motion to Quash Service and to Dismiss Due to Lack of Jurisdiction, and Motion to Transfer Venue, plaintiffs' Opposition thereto, defendants' Reply, and Supplemental Memoranda submitted by both plaintiffs and defendants in the above-captioned action. Defendants argue that they lack the minimum contacts with the District of Columbia ("District") necessary to subject them to personal jurisdiction in the District under the constitutional requirements of due process and the District of Columbia's long-arm statute, D.C.Code § 13–423(a)(4).

Upon consideration of the submissions of the parties, their arguments before this Court on June 26, 1991, and the entire record herein, the Court shall deny the defendant's motions. The Court finds that the defendants have sufficient contacts with the District of Columbia to warrant personal jurisdiction in this case.

## I. *Background*

The plaintiff Lakie Ray Fogle, Jr. alleges that he sustained serious injuries while using a winch on a tow truck in the District of Columbia in April, 1988. He alleges that the winch was defective and seeks damages from the manufacturer and distributor. The manufacturer, defendant Ramsey, an Oklahoma corporation, argues that it is not subject to personal jurisdiction in the District of Columbia because Ramsey lacks sufficient contacts. Ramsey cites a variety of factors to support this proposition: it is not incorporated in the District, has no place of business in the District, the product in question was not purchased in the District, Ramsey's sales volume in the District was "negligible", Ramsey does not advertise "locally", etc. In addition, the defendant argues that there is no nexus between Ramsey's contacts with the District and the claim for relief, because the plaintiff bought the winch in Alabama, and was living in Virginia, where his business was located and the winch was delivered, when the accident "fortuitously" occurred

in the District. Ramsey further argues that venue is improper.

The plaintiff offers a different interpretation of the nature of the defendant's contacts with the District, and argues that they are sufficient to warrant jurisdiction. He notes that the injury in question occurred in the District. Plaintiff argues that Ramsey winches are used in the District; that Ramsey itself claims in its advertisements that Ramsey winches are on "about eight out of ten tow trucks today," presumably including tow trucks in the District. Ramsey regularly advertises in national consumer and towing & wrecking industry magazines, most of which are sold over-the-counter in Washington, D.C.

The Court heard oral arguments from the parties on the motion on July 26, 1991, after which the parties submitted supplementary memoranda addressing the issue of jurisdiction.

## II. *Analysis*

The plaintiff must show that the exercise of jurisdiction here both comports with the constitutional requirements of due process and satisfies the requirements of the D.C. long-arm statute.

### A. Constitutional Requirements

Due process requires that a defendant have minimum contacts with the forum state such that being sued there comports with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

In *World–Wide Volkswagen*, the Supreme Court held that there was no personal jurisdiction in Oklahoma against a New York automobile retailer whose sales were limited to New York, New Jersey, and Connecticut, and where the retailer never sought to serve the Oklahoma market in any way. Jurisdiction could not be based

solely on the fortuitous circumstance that the car happened to break down while passing through Oklahoma. *Id.* The Court limited its holding, stating that

> if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

444 U.S. at 297–98, 100 S.Ct. at 567–68.

■ In this case, the use of the winch in the District of Columbia arose from the efforts of Ramsey to market its winches nationally, including inside the District. While Ramsey has no distributors within the boundaries of the District, Ramsey has two distributors in the Washington, D.C. area, one in Maryland, and one in Virginia. Its national advertisements reach consumers in the District. Ramsey claims that approximately eight out of ten tow trucks use Ramsey winches. Moreover, twenty-seven percent of Ramsey's sales are to large manufacturing accounts that use the winches in products they manufacture. Ramsey did not specify where these goods are distributed; most likely they are distributed nationally. For all of these reasons, Ramsey should have expected that its winches would be purchased by consumers in the District, and thus should have anticipated being haled into court there.

In *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), four members of the Supreme Court supported the proposition that placing a product into the stream of commerce, without more, is insufficient to warrant jurisdiction. There must be an action of the defendant "purposefully directed toward the forum state." *Id.* at 112, 107 S.Ct. at 1032, *citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). Even under this stricter approach, Ramsey is subject to jurisdiction in the District of Columbia. Ramsey did not manufacture a product that just happened to wind up in the District. Rather, Ramsey's marketing approach envisions and boasts the omnipresence of its winches throughout the country. It took affirmative steps to achieve these results, many of which are outlined above. Given the national sweep of Ramsey's market, it seems more fortuitous that Ramsey does *not* have a distributor in the District than that the plaintiff was using a Ramsey winch there.

■ A number of other factors may be considered in determining the reasonableness of jurisdiction in a given case, including the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. *Asahi,* 107 S.Ct. at 1033. Here, a number of factors indicate that the exercise of personal jurisdiction over Ramsey is reasonable. As the site of plaintiff's injury, the District of Columbia has an interest in preventing defective products from crossing its borders and causing injuries. The plaintiff also was hospitalized in the District immediately following his accident. Plaintiff's treating neurosurgeon and neuropsychologist have their offices in the District as well. The plaintiff's witnesses are located in the D.C. area. *See Gatewood v. Fiat, S.p.A.,* 617 F.2d 820, 827–28 (1980). While Virginia might appear to be a viable alternative forum, the residence of the plaintiffs no longer constitutes proper venue in a diversity action. *See* 28 U.S.C. § 1391(a).

For all of the reasons given above, the exercise of personal jurisdiction over the defendant Ramsey comports with constitutional requirements.

**B. The District of Columbia Long–Arm Statute**

Having met the constitutional requirements for personal jurisdiction, the plain-

tiff must show that the requirements of the District of Columbia long-arm statute are met. The statute states in relevant part that:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

. . .

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C.Code § 13–423(a) (1989).

The issue, then, is whether Ramsey's contacts with the District meet the requirements of § 13–423(a)(4); that is, does Ramsey regularly do or solicit business, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed in the District? The "substantial revenue" test is most applicable here. The District of Columbia Circuit has held that § 13–423(a)(4) is more restrictive than the due process clause, requiring a "plus factor" to "filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Crane v. Carr*, 814 F.2d 758 (D.C.Cir.1987).[1] The defendant here has sufficient contacts to satisfy this "plus factor".

Some courts have held that " 'substantial revenue' means enough revenue to indicate a commercial impact in the forum, such that a defendant fairly could have expected to be haled into court there. It is incorrect to equate the 'idea of commercial impact on the forum with the narrower concept of

financial gain or loss in the forum.' " *Delahanty v. Hinckley*, 686 F.Supp. 920, 925 (D.D.C.1986) (Penn, J.) (citing *Health Care Industries, Inc. v. Logan Park Care Center, Inc.*, 573 F.Supp. 360, 363 (S.D.Oh. 1983), citing *Davis H. Elliot Co. v. Caribbean Utilities, Co.*, 513 F.2d 1176, 1181 (6th Cir.1975) (per curiam)). The definition of substantial revenue will fluctuate with the facts of each case. *Delahanty* at 925. The D.C. Circuit has held that the test for substantial revenue "looks both at the absolute amount and at the percentage of total sales, and determines what is 'substantial' on the facts of each case." *Founding Church of Scientology v. Verlag*, 536 F.2d 429, 433 (D.C.Cir.1976).

Particularly instructive in this case is *Gatewood v. Fiat, S.p.A.*, 617 F.2d 820 (D.C.Cir.1980). *Gatewood* involved a claim against an automobile manufacturer and distributor for injuries incurred in a Fiat automobile involved in an accident in the District. The defendants had no offices, agents, or franchised dealers in the District of Columbia, but there were sales and service agencies located nearby. Less than two percent of the distributor's revenue was produced by sales in the D.C. area, but the record did not reveal precisely how many of these cars were used in the District itself. The Court recognized that common sense indicated that many of these new cars were used in the District, and concluded that the sales totals were more than adequate to constitute "substantial revenue" under the Long–Arm statute.

■ Here, Ramsey makes the undisputed claim in its advertising that eight out of ten tow trucks with winches use Ramsey winches, and has not sought to retract that statement in light of this litigation.[2] There

---

1. Since this question involves the interpretation of a state statute, case law from the District of Columbia Court of Appeals was consulted. However, that court has had "almost no occasion to discuss § 13–423(a)(4)." *Parsons v. Mains*, 580 A.2d 1329 (D.C.App.1990). *Parsons* interpreted the "regular business" and "persistent course of conduct" clauses of (a)(4) (rather than the "substantial revenue" clause), and held an attorney's appearance as counsel of record in two or three unrelated actions over ten years insufficient to constitute regular business. In

*Mouzavires v. Baxter*, 434 A.2d 988, 991 (D.C.App.1981), *cert. denied* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982), the court implied (based on an interpretation of the Maryland long-arm statute) that § 13–423(a)(4) is narrower in scope that the due process clause of the Constitution, before proceeding to an analysis of another section of the statute.

2. Ramsey does qualify its advertisement that "you will find a Ramsey winch on about eight

has been no showing that this claim is less applicable to the District of Columbia than the rest of the country.[3] This prevalence of Ramsey winches constitutes a "commercial impact" on the District sufficient to meet the substantial revenue test. *See Delahanty v. Hinckley,* 686 F.Supp. at 925 (D.D.C.1986). An analysis of the marketing of Ramsey winches supports this conclusion.

While the number of documented sales of Ramsey winches by the local distributors to District residents is low,[4] this figure is a grossly inadequate measure of the revenue Ramsey has gained from the *use* of winches in the District, the inquiry the statute demands. As stated in *Gatewood v. Fiat, S.p.A.,* common sense dictates the finding that many cars purchased in the D.C. area are used within the District. 617 F.2d at 827. This conclusion is similarly applicable to winches, which are used in conjunction with trucks. Defendant counters that even the sales by the two area distributors are slight in relation to Ramsey's total sales; together, they average an annual total of approximately $27,000, which is approximately .12% of Ramsey's total annual sales volume. Yet this figure also fails to account for the number of Ramsey winches likely used in the District, especially in light of the assertion that eight of ten winches in tow trucks are Ramsey winches. Ramsey reports that 27% of its sales are to large manufacturers that use Ramsey winches in their own products. Ramsey did not provide statistics on the distribution of these products, but it seems reasonable to infer that a portion of these products are used in the District. Further, one Ramsey distributor sells by mail order. Some Ramsey winches likely find their way to the District of Columbia area through mail order, or through delivery by other, more distant distributors.[5] The figures provided by Ramsey fail to account for these sources of revenue, and seem inadequate to reflect the impact of Ramsey winches on the District of Columbia and the benefits Ramsey enjoys as a result of its contacts with the District.

The defendant also argues that there is no jurisdiction in the District because there is no nexus between defendant's contacts and the injury. The law does not support this position. The Court of Appeals has held that there need not be a nexus between the injury and the contacts of the defendant with the District for § 13–423 to apply. *Gatewood,* 617 F.2d at 824. Rather, the plaintiff must show that the requirements of § 13–423(a)(4) are met and that the claim arises from an injury occurring in the District. *Id.* at 825. Ramsey's contacts satisfy the substantial revenue test, and the injury alleged here occurred in the District. Therefore the requirements of § 13–423 are satisfied.

## C. Venue

Venue is proper in a diversity case in a district where any defendant resides, where a substantial part of the events or omissions giving rise to the claim occurred, or where the defendants are subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(a). As previously discussed herein, the defendant Ramsey was subject to personal jurisdiction in the District of Columbia at the commencement of this action. Therefore

---

out of ten tow trucks today" by asking the Court to consider: 1) the number of tow trucks without winches; and 2) the fact that two other winch companies are larger than Ramsey. Neither of these statements effectively contradict the underlying assertion.

3. The Court finds Ramsey's claim that few service stations in the District use tow trucks, based on its survey of approximately twenty service stations listed in a District telephone directory, unpersuasive. The plaintiff points out that the telephone directory lists over 140 service stations, many of which may have tow

trucks. The plaintiff further notes that even from the defendant's small sample, 60% of the service stations that reported using tow trucks with winches used Ramsey winches.

4. Ramsey warranty records indicate only seven sales to persons with a Washington, D.C. address between January 1, 1988 and July 19, 1991, resulting in a retail sales volume of approximately $4500.

5. It appears that the plaintiff in this case, for example, obtained the winch from a distributor in Alabama who delivered it to Virginia.

venue is proper in this Court. Moreover, the injury giving rise to the action took place in the District; this constitutes another justification for venue in this Court under 28 U.S.C. § 1391(a)(2).

■ The plaintiff has wide discretion in choosing a forum. *See, e.g., Masterson-Cook v. Criss Bros. Iron Works, Inc.*, 722 F.Supp. 810, 812 (D.D.C.1989), *dismissed on other grounds sub nom. Perry v. Criss Bros. Iron Works, Inc.*, 741 F.Supp. 985 (D.D.C.1990). The Court shall not overturn the plaintiff's proper selection in this case. In fact, while the defendant has suggested alternative forums, none are as appropriate as the present forum. Virginia is not possible because the residence of the plaintiffs no longer constitutes proper venue in a diversity action. *See* 28 U.S.C. § 1391(a). Neither Alabama, the state in which the plaintiff purchased the winch and the residence of the codefendant, nor Oklahoma, the residence of Ramsey and the state in which the winch was manufactured, are as suitable as the District of Columbia. The defendant has offered no compelling reasons that these forums are preferable to the District. The District is, as stated above, the site of the accident, the place where the plaintiff was hospitalized for five days immediately following the accident, the place where plaintiff's neurosurgeon and neuropsychologist maintain their offices, and the plaintiff's current residence. Moreover, this forum is convenient for plaintiff's witnesses.

### D. Service of Process

Because this Court has personal jurisdiction over the defendant Ramsey, service of process of the defendant was proper. *See* D.C.Code § 13-424 (1989).

### III. *Conclusion*

For all of the foregoing reasons, the defendant's Motion to Dismiss for Lack of Jurisdiction and to Quash Service of Process, and Motion to Transfer Venue shall be denied.