R. Avon Buice, Warner Robins, Ga., for defendant-appellant.

John S. Casey, Heflin, Ala., for plaintiff-appellee.

**BANK OF HEFLIN, HEFLIN, ALABAMA, Plaintiff-Appellee,**

v.

**LANDMARK INNS OF AMERICA, INC., etc., et al., Defendants,**

**Charles W. Luedtke, Defendant-Appellant.**

**No. 77–2151.**

United States Court of Appeals, Fifth Circuit.

Oct. 10, 1979.

Rehearing Denied Nov. 15, 1979.

Before TJOFLAT and VANCE, Circuit Judges, ALLGOOD, District Judge.[*]

VANCE, Circuit Judge:

Defendant, Charles W. Luedtke, appeals a summary judgment in which the plaintiff bank was awarded $25,000.00 plus interest and attorneys fees.

In March 1974 appellant and his codefendant, William G. Kinsey, each owned fifty percent of the common stock of codefendant, Landmark Inns of America, Inc. On behalf of the corporate defendant, Kinsey obtained a $75,000.00 line of credit from the Exchange Bank of Montgomery, Alabama. He gave the corporation's notes to the bank in the amount of $50,000.00 on March 14, 1974, and $25,000.00 on April 23, 1974. By April 4, 1974, the bank had re-

---

**\*** District Judge of the Northern District of Alabama, sitting by designation.

ceived personal guarantees for the entire $75,000.00 purportedly executed by the two principals, Kinsey and Luedtke. The proceeds of the $25,000.00 note were credited to Landmark's account, and Exchange Bank sold that note without recourse to the plaintiff bank.

On July 20, 1974, defendants Kinsey and Luedtke sold all of the outstanding capital stock of the corporate defendant to Larco Enterprises, Inc. and Allan J. Larson. Paragraph 11 of the written sales agreement between the parties to that transaction provided in part,

> Buyers and Larson have notice of the indebtedness of Landmark Inns of America, Inc. to (1) Exchange National Bank, Montgomery, Alabama, which indebtedness has been endorsed and/or personally guaranteed by Sellers in the original principal sum of $75,000.00; . . .; and Buyer and Larson shall hold Sellers harmless from the payment of such guarantees and/or personal endorsements, and shall make such payments . . . so that no payment of such debts may be enforced against sellers personally.

In September 1974 the new purchasers failed to make the payments in accordance with this provision. Exchange Bank then sued defendants for nonpayment of the $50,000.00 note which it held, and plaintiff bank filed this suit against defendants on the $25,000.00 note which it had purchased.

Several months later Kinsey and Luedtke sued Larco Enterprises, Inc. and Larson in the United States District Court for the Eastern District of Tennessee for several breaches of their July 20, 1974, agreement, including their nonpayment of the $75,-000.00 indebtedness specified in paragraph 11. On motion for default judgment a hearing was held at which Luedtke testified in support of the motion. Based on his testimony and other evidence the court awarded judgment to defendant Kinsey in the amount of $132,963.81 and to appellant

in the amount of $152,839.01. These awards included damages for the buyers' nonpayment of the $75,000.00 notes to Exchange Bank.

Exchange Bank's suit against Luedtke and Kinsey was tried in February 1976. Appellant denied indebtedness under the guarantee. The district court, however, entered judgment for Exchange Bank holding that Luedtke was collaterally estopped from claiming that he did not execute the guarantee or denying that he guaranteed payment of the $75,000.00 because he had obtained a judgment on that indebtedness in the federal district court in Tennessee.[1] On appeal, the district court's holding was affirmed without opinion by this court. *Exchange National Bank v. Landmark Inns of America, Inc.*, 549 F.2d 201 (5th Cir. 1977).

In this action, filed by Bank of Heflin on the $25,000 note, Luedtke again denied that he was indebted under the guarantee. Before the same district court that had tried the *Exchange Bank* case, he alleged that he did not sign the guarantee and that the guarantee is, therefore, a forgery. The district court granted summary judgment in favor of Bank of Heflin. On appeal, both parties argue the applicability of collateral estoppel under the facts presented to the district court.

"Collateral estoppel precludes a party from relitigating an issue of ultimate fact that has already been decided in a prior adjudication" *In re Merrill*, 594 F.2d 1064, 1067 (5th Cir. 1979). In the *Exchange Bank* case, the issue of Luedtke's indebtedness under the guarantee was fully litigated, and the court found that "the defenses against the claim of the plaintiff are not supported by the evidence, and the plaintiff is entitled to recover from the defendants Kinsey and Luedtke."

Bank of Heflin was not a party to the *Exchange Bank* action, and Luedtke argues

---

1. The district court based its application of the doctrine on its findings that appellant was not acting in good faith and that his inconsistent position would lead to an inequitable result, citing *Jamison v. Garrett,* 92 U.S.App.D.C. 232,

205 F.2d 15 (D.C. Cir. 1953); *Scarano v. Central R. Co.,* 203 F.2d 510 (3rd Cir. 1953); *Bishop & Babcock Mfg. Co. v. Sears, Roebuck & Co.,* 125 F.Supp. 528 (N.D. Ohio 1954), *aff'd* 232 F.2d 116 (6th Cir. 1956).

that it cannot assert collateral estoppel for that reason. Under federal law, a party asserting estoppel defensively need not have been a party to the prior action. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 349–50, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *In re Merrill,* 594 F.2d at 1067. In *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court permitted a plaintiff who was not a party to the prior action to assert collateral estoppel in an offensive, rather than a defensive, posture:

> We have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied.

*Id.* at 651. Bank of Heflin, like the plaintiff in *Parklane Hosiery,* argued from an offensive position that defendant should be estopped by the prior action, and the district court agreed.

In *Parklane Hosiery,* the court specified that the offensive use of collateral estoppel should be precluded if its application would be unfair to a defendant. Similarly, in *Johnson v. United States,* 576 F.2d 606, 614 (5th Cir. 1978), this court stated,

> [T]he offensive use of collateral estoppel calls for the courts to use special care in examining the circumstances to ascertain that the defendant has in fact had a full and fair opportunity to litigate and that preclusion will not lead to unjust results.

The district court in this case found, based on the Tennessee judgment, that Luedtke's argument was made in bad faith and that estopping him from challenging the guarantee would yield the only fair result. In the *Exchange Bank* action as well as the Tennessee case Luedtke had an opportunity to fully and fairly question the validity of the guarantee. *See James Talcott, Inc. v. Allahabad Bank, Ltd.,* 444 F.2d 451, 461–63 (5th Cir.), *cert. denied,* 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971). In the *Exchange Bank* adjudication he challenged the guarantee, but the issue was decided against

him. We therefore find that the trial court correctly permitted Bank of Heflin to assert collateral estoppel and thus to preclude Luedtke from again challenging the validity of the guarantee.

AFFIRMED.