**June L. MYERS, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 77–3600.**

United States Court of Appeals, Ninth Circuit.

Feb. 11, 1980.

Charles S. Grobe, Grobe & Bazaar, Los Angeles, Cal., for plaintiff-appellant.

Karl P. Fryzel, Washington, D. C., argued, Jonathan S. Cohen, Washington, D. C., on brief, for defendant-appellee.

Before KENNEDY and HUG, Circuit Judges, and CORDOVA *, District Judge.

CORDOVA, District Judge:

This is an appeal from a judgment denying June L. Myers' (taxpayer) claim for a refund of taxes. The refund claim relates to her royalty proceeds from the transfer of her interest in a patent application and whether such proceeds should be taxed as ordinary income or capital gain. The District Court found that a patent application, for which a "notice of allowance" has been received prior to transfer, had "sufficiently matured" so as to be property subject to an allowance for depreciation and that the proceeds from such transfer are taxable as

* Honorable Valdemar A. Cordova, United States District Court Judge for the District of Arizona, sitting by designation.

ordinary income. 26 U.S.C.A. (I.R.C.1954) § 1239(b). We affirm.

*FACTS*:

In the instant action, taxpayer's late husband applied for a patent (Patent Application No. 777,321). On January 31, 1963 the Patent Office issued a formal "notice of allowance" of the patent application and requested the $30.00 final fee be paid for the issuance of Letters Patent. On June 29, 1963 Appellant Myers transferred and granted to Myers Electric Products, Inc., her wholly owned corporation, the "sole and exclusive right, privilege and license to use, manufacture, produce and sell the invention covered by Patent Application No. 777,321 for a period of 20 years." Sometime after the transfer, the final fee was paid and Letters Patent were issued on September 17, 1963.

*ISSUE*:

The question presented on appeal is whether Patent Application No. 777,321 is property which in the hands of the transferee is of a character which is subject to the allowance for depreciation provided in Section 167 of the Internal Revenue Code of 1954 and whether the gain realized thereby is ordinary income under Section 1239 of the Code.

*DISCUSSION*:

Section 1239 of the Internal Revenue Code of 1954 [1] provides that any gain recognized to the transferor in the sale or exchange of depreciable property, directly or indirectly, to a controlled corporation must be taxed as ordinary income, not as capital gain.

The legislative intent of § 1239 of the Internal Revenue Code is evident from the language of the statute itself. It is clear that § 1239 was intended to prevent situations in which a taxpayer sells appreciated property at current market price to his controlled corporation, and while keeping control over the property reaps the benefits of both capital gains treatment for himself and depreciation deductions against ordinary income in his controlled corporation. The reason is therefore evident why the transferor's gain should be treated as ordinary income where he transfers depreciable property to his controlled corporation.

Considering the above legislative purpose, this Court is called upon to determine when patent applications mature to the point of becoming depreciable property for the purposes set forth in § 1239 of the Internal Revenue Code. It appears that patents go through an evolutionary process which includes the patent application, letter of "appearance of allowability", formal "notice of allowability" and finally issuance of the patent. Generally a patent application represents an assignable property right which is nondepreciable because it has no definite period of useful life. At the other end of the evolutionary process of patents is the issuance of the patent. There is no dispute that a patent is property, is depreciable and falls within the purview of § 1239. *Hershey Mfg. Co. v. Commissioner*, 43 F.2d 298 (10th Cir. 1930). We concern ourselves with a consideration of those situations between the filing of the patent application and the final issuance of the letters patent.

1. Int.Rev.Code of 1954, § 1239 provides in pertinent part:
   (a) TREATMENT OF GAIN AS ORDINARY INCOME.—In the case of a sale or exchange, directly or indirectly, of property described in subsection (b)—
        *   *   *   *   *   *
   (2) between an individual and a corporation more than 80 percent in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren;
   any gain recognized to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231.
   (b) SECTION APPLICABLE ONLY TO SALE OR EXCHANGE OF DEPRECIABLE PROPERTY.—This section shall apply only in the case of a sale or exchange by a transferor of property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167.
        *   *   *   *   *   *

Appellant Myers contends and relies upon the generally accepted rule that patent applications are not depreciable property and not subject to ordinary income treatment. Appellant further urges in conformity with this general rule that for tax purposes, the boundary line between a patent application and the patent itself cannot be crossed until letters patent are actually issued. At first blush, this reasoning would appear to be logical; we must look, however, to the legislative intent to resolve the issue presented.

To accept Appellant's theory would mean that a taxpayer upon receipt of the formal "notice of allowability" could by simply delaying the payment of the final patent fee insure the receipt of capital gain treatment by transferring his right, title and interest in the patent application to a corporation wherein he owns more than 80 percent in value of the outstanding stock.

There comes a point in some patent applications where the possibility of issuance of letters patent is overtaken by the probability of such issuance. The appropriate standard to be applied to cases similarly situated as the one before us now has been set forth in the *Estate of Stahl v. Commissioner*, 442 F.2d 324 (7th Cir. 1971). This Court expressly adopts that part of the rationale of *Stahl* which provides that patent applications as to which official notices of allowance have been received by the transferor prior to the sale are sufficiently matured applications so as to require that they be treated as patents for the purposes of § 1239. The *Stahl* court realized, as we do, that where patent applications are virtually certain to mature into depreciable patents with the merest of diligence by the transferee in processing the applications after the sale, a mechanistic distinction between patents and those patent applications which have been the subject of official indications of allowability is unwarranted.

Appellant attempts to respond to the rationale of *Stahl* with the later 1st Circuit case of *Chu v. Commissioner*, 486 F.2d 696 (1st Cir. 1973). We first note that in *Chu* the taxpayer had merely received notifica-

tion of a possibility of the issuance of the patent by receipt of a letter of "appearance of allowability" and had not received the probability of issuance of the patent in that he had not received the formal "notice of allowability". While we may not agree with taxpayer's contention that *Chu* expressly rejected the decision in *Stahl*, it is enough that we find the two cases factually distinguishable. In *Chu*, the applicant assigned his patent application after the Patent Office informed him that only six minor claims of eighteen claims "appeared allowable", while the heart of the patent had been rejected. Thereafter, an amended application was filed which was followed by a "notice of allowance" and then the patent. The *Chu* court attempted to apply *Stahl* but could not since the "notice of allowance" as to the heart of the application was not issued until after the transfer.

Appellant further contends that she either relied or had the right to rely on the law as it existed at the time of the transfer. The relevant law as it existed in 1963 was Section 1239 and the regulations thereunder. Taxpayer relies on a Solicitor's Memorandum, SM 5038 CB V–1, released by the Treasury Department, which generally stated that applications for letters patent are not property which is subject to depreciation.

It is conceded by the parties that at the time of the transfer there was no case law directly on point. Appellant argues that it was not until a 1967 Revenue Ruling, Rev. Rule 67–136, 1967–1 CB, 58, that the Government recognized that patent applications are subject to depreciation when a patent will issue in the "normal course" of events.

Taxpayer's position herein, however, ignores the facts before us. The record clearly indicates that the tax return in question was filed by her treating the proceeds as ordinary income. At the time her tax return was filed she treated the income as ordinary income and obviously did not rely on the Solicitor's Memorandum. The Appellant's contention of reliance is therefore not a viable issue in this case. As to wheth-

er Appellant had a right to rely on the law (Solicitor's Memorandum) is a purely academic question which this Court need not address.

Accordingly, this Court finds that upon payment of the final fee, the patent would have issued, as indeed it did, in the normal course of events. Under these circumstances, the patent application had "matured" and was subject to an allowance for depreciation under Section 167 of the Internal Revenue Code. Since the application herein had matured and was properly characterized as depreciable property by the trial court, the proceeds therefrom were subject to tax as ordinary income when transferred by Appellant Myers to her wholly owned corporation.

AFFIRMED.