FRIENDS FOR ALL CHILDREN, INC., as legal guardian and next friend of the named 150 infant individuals et al., Plaintiff,

v.

LOCKHEED AIRCRAFT CORPORATION, Defendant and Third–Party Plaintiff,

v.

The UNITED STATES of America, Third–Party Defendant.

James Everett REYNOLDS et cetera, Plaintiff,

v.

LOCKHEED AIRCRAFT CORPORATION, Defendant and Third–Party Plaintiff,

v.

The UNITED STATES of America, Third–Party Defendant.

Civ. Action Nos. 76–0544, 76–0544–62.

United States District Court, District of Columbia.

Aug. 21, 1980.

314

Oren R. Lewis, Jr., Richard H. Jones, Lewis, Wilson, Lewis & Sons, Ltd., Arlington, Va., J. Vernon Patrick, Jr., Berkowitz, Lefkozits & Patrick, Birmingham, Ala., for plaintiffs.

Carroll E. Dubuc, Washington, D. C., for Lockheed Aircraft Corp.

Mark Dombroff, James P. Piper, Civ. Div., U. S. Dept. of Justice, Washington, D. C., for the U. S.

## MEMORANDUM

### I.

OBERDORFER, District Judge.

Plaintiff James Reynolds has moved for a ruling *in limine* to prevent defendant Lockheed or third–party defendant the United States from relitigating certain issues assertedly decided in plaintiff's favor in the prior cases of *Schneider v. Lockheed*, No. 76–0544–1, and *Marchetti v. Lockheed*, No. 76–0544–3. Defendant Lockheed opposes plaintiff's motion; Lockheed maintains that the circumstances of these cases are not appropriate for the application of offensive collateral estoppel. For the reasons set forth herein, plaintiff's motion will be granted. Additionally, the Court has treated this motion, which has been fully briefed by both parties, as a motion for partial summary judgment in the cases of the remaining infant survivors. *See FFAC v, Lockheed*, No. 76–0544. On the basis of the partial summary judgment, which the Court grants by accompanying Order, a ruling reflecting the substance of plaintiff's motion *in limine* will be incorporated into the comprehensive pretrial order governing the trial of all the remaining claims against Lockheed by the infant survivors.

Trial of plaintiff Reynolds' claims against Lockheed will involve a consideration only of the amount of damages, if any, to which he is entitled as a result of the crash of a Lockheed–built C5–A near Saigon on April 4, 1975. By stipulation of September 14, 1979, filed December 6, 1979, Lockheed agreed not to contest its liability to plaintiff Reynolds and all other infant survivors for injuries proximately caused or aggravated by the crash. Trial of the initial three cases thus involved determination first of whether the plaintiffs now suffer from any injury, disease, defect or disability; and, if so, whether those injuries were the result of the crash. A substantial proportion of the testimony and argument was devoted to the question of whether the forces and conditions associated with the crash were sufficient to cause injury to an infant passenger in the plane's troop compartment. All this

testimony was necessarily general, since the precise location or circumstances of each individual infant in the troop compartment is unknown. A single jury, sitting in all three cases, rendered a verdict of $500,000 for plaintiff Schneider and $1,000,000 for plaintiff Marchetti. After a partial settlement of $30,000 occasioned the withdrawal of one of plaintiff Zimmerly's claims, the jury returned a verdict for defendant Lockheed. By order of July 15, 1980, the verdict in *Zimmerly v. Lockheed* was set aside and a new trial ordered for reasons fully explained in a memorandum filed July 22, 1980. By Orders of July 8, 1980, the Court denied Lockheed's motions for a new trial or, in the alternative, for judgment n. o. v. in *Schneider v. Lockheed* and *Marchetti v. Lockheed.*

## II.

Plaintiff's motion seeks to prevent Lockheed from retrying in *Reynolds* (and subsequent cases) the questions of whether the explosive decompression at 24,000 feet altitude, hypoxia, impact of the C5–A with the ground at 310 miles an hour, and psychological trauma, alone or in combination, were sufficient to (a) proximately cause minimal brain dysfunction (MBD) or (b) proximately aggravate a pre–existing injury, defect, or disease of an infant passenger. In support of this motion, plaintiff relies upon the verdict in *Schneider v. Lockheed*, in which the jury found that each of these forces aggravated a pre–existing condition, and the verdict in *Marchetti v. Lockheed*, in which the jury found that these same forces proximately caused injury to plaintiff. In each case, the jury rendered a special verdict (copies of which are attached hereto) in

which it expressly found that the enumerated forces, alone and in combination, proximately caused (in *Marchetti*) and aggravated (in *Schneider*) injuries to plaintiff.

Granting plaintiff's motion would not prevent Lockheed from attempting to argue that the plaintiff has no medical manifestations of injury or that any such manifestations were caused by events unrelated to the crash. Rather, the motion seeks to preclude Lockheed from asserting–as it has in the first three trials–that the forces associated with the crash were insufficient to cause injury to an infant passenger aboard the C5–A.

■ These actions are brought in diversity. The Court has determined that the law of the District of Columbia applies to all aspects of these cases. *In re Air Crash Disaster Near Saigon*, 476 F.Supp. 521, 529 (D.D.C.1979). It is settled in this Circuit that a federal court sitting in diversity must look to the applicable local law to determine whether, and the extent to which, principles of collateral estoppel may be employed. *Gatewood v. Fiat*, 617 F.2d 820, 826 n. 11 (D.C. Cir. 1980); *but see In re Multidistrict Civil Actions, etc.*, No. 3834ML (S.D. Ohio, Sept. 26, 1972). In making this determination, the Court has the benefit of the very recent opinion of the District of Columbia Court of Appeals in the case of *Jackson v. District of Columbia*, 412 A.2d 948 (D.C.App.1980).[1] The D.C. Court of Appeals there abrogated the requirement of mutuality, which formerly prevented a party from using a prior judgment as an estoppel against the other unless both parties were bound by the judgment. *Jackson v. District of Columbia*, at 953. However,

1. In *Gatewood v. Fiat*, 617 F.2d 820, 826 n. 11 (D.C. Cir. 1980), the Court of Appeals for the District of Columbia Circuit, reviewing the decision of the U.S. District Court in a diversity action applying D.C. law, declined to abrogate the principle of mutuality. The Court noted that "[a]brogation of the mutuality requirement in the District of Columbia, if it is to occur, must be done by the District of Columbia Courts, not by federal courts applying local law in a diversity action." 617 F.2d at 826 n. 11. The opinion of the Court of Appeals in *Gatewood* was followed less than two months later

by the decision of the District of Columbia Court of Appeals in *Jackson v. District of Columbia, supra*, in which the D.C. Court of Appeals expressly abrogated the mutuality doctrine. *Gatewood* is clear that in considering the issue of estoppel in a diversity action, we must look to local law. However, in view of the subsequent holding by the highest court for the District of Columbia in *Jackson, Gatewood* does not prevent this Court from construing local law to permit the use of offensive collateral estoppel.

that Court did not reach the question of whether estoppel may be employed offensively, as plaintiffs seek to do here. *See Jackson v. District of Columbia*, at 953 n. 11.

■ Although a federal court must defer to a determination of state law by the highest court of a jurisdiction, it need not await a conclusive determination of an unsettled issue of state law. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). With the demise of "mutuality," it is too ephemeral to suggest that D.C. law would foreclose the use of offensive collateral estoppel in these circumstances. In reaching this conclusion, the Court notes first that in abrogating the requirement of mutuality, the D.C. Court of Appeals relied upon the same authority and reasoning employed by the United States Supreme Court in permitting the use of offensive collateral estoppel in Federal courts. *Compare Jackson v. District of Columbia*, at 952–953, *with Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Specifically, the *Jackson* court relies upon the Restatement (Second) of Judgments § 88, which makes no distinction between offensive and defensive use of collateral estoppel. *See Parklane Hosiery Co. v. Lane*, 99 S.Ct. at 651 n. 16. Second, the D.C. Court of Appeals has already sanctioned the use of offensive collateral estoppel where a plaintiff in a civil action has attempted to assert judgment in a preceding criminal action against a party who is a defendant in both cases. *Ross v. Lawson*, 395 A.2d 54 (D.C. App.1978). Finally, the "considerations of fairness or correct resolution of the dispute," which the *Jackson* court implied might effect the use of offensive estoppel generally, do not preclude its use in the circumstances here. *See Jackson v. District of Columbia*, at 953. As is discussed more fully below, there are no differences in forum or procedures between the cases already tried by this Court and those that remain to be tried that would render it unfair for Lockheed to be bound by a prior judgment in this Court. Accordingly, the Court finds that under these circumstances,

including the tangential federal interest previously considered (*see In re Air Crash Near Saigon, supra*), the law of the District of Columbia permits the use of offensive collateral estoppel.

### III.

■ Assuming that offensive collateral estoppel is available as a matter of law, its application to particular cases is a matter within the discretion of the trial court. *See Parklane Hosiery Co. v. Shore*, 99 S.Ct. at 651. None of the circumstances that might militate against the use of offensive collateral estoppel are present here.

■ First, plaintiff Reynolds (and all other surviving infant plaintiffs) could not have joined the prior actions, the results of which they now seek to employ. Suffice it to say that defendant Lockheed has consistently opposed any consolidation of the damage claims of the infant survivors, and cannot be heard to complain because plaintiff failed to join the earlier actions. Accordingly, the use of collateral estoppel in these actions will not undermine judicial efficiency by encouraging plaintiffs not to join similar claims against a common defendant.

■ Second, there is no unfairness in employing collateral estoppel against Lockheed. All the claims of the infant survivors were filed simultaneously and have proceeded through the pretrial stages in concert. All plaintiffs (as well as defendant Lockheed) have retained the same counsel throughout, and the Court has appointed a single guardian *ad litem* for all. Plaintiffs shared the identical physical experiences; each is alleged to be the victim of the identical forces and conditions. In the two jury trials relied upon to effect the estoppel, the circumstances of the flight were thoroughly developed. The key witnesses, including the flight crew, nurses, and adult passengers have testified at length. Medical testimony was elicited from articulate experts who had examined a number of the infant passengers, made written reports, been heavily deposed, and testified extensively on direct and cross examination.

There can, accordingly, be no suggestion that Lockheed did not contest the *Marchetti* and *Schneider* cases vigorously because it was unaware of the possibility of further damage claims by other plaintiffs. Indeed, the *Schneider* and *Marchetti* cases were early identified as "bellwether" cases, and the possibility of giving the verdicts in these cases collateral effect has been discussed for many months. Lockheed has had a full, fair, and complete opportunity to present its proof on the issues on which plaintiff now seeks to foreclose and narrow further litigation.

■ Third, the decisions upon which the plaintiffs rely are not inconsistent with any other decisions. Although the jury found for the defendant in *Zimmerly v. Lockheed*, No. 76–0544–2, that verdict was the product of confusion and error. It has been set aside. *See* Order of July 15, 1980; Memorandum of July 22, 1980. Moreover, a defendant's verdict in *Zimmerly*, even if it were allowed to stand, would not be inconsistent with the conclusion reached here. The jury in *Zimmerly* found that the plaintiff did not suffer from any disease, defect, disability or injury that was caused or aggravated by the crash. This conclusion may well reflect a finding by the jury that plaintiff Zimmerly suffers no injury, disease, defect, or disability from any cause, although the crash might well have caused such injuries. In view of the clarity of the jury's findings on the special verdicts in the *Schneider* and *Marchetti* cases, and the peculiar circumstances that require a new trial for plaintiff Zimmerly, it is unnecessary to speculate further.

■ Finally, there are no procedural opportunities available to Lockheed in *Reynolds* (or subsequent proceedings) that were unavailable to it in the *Schneider* and *Marchetti* cases. All the remaining cases will be tried in this District Court, subject not only to identical rules of procedure, but also identical rulings on the admissibility of evidence and instructions to the jury. Lockheed cannot possibly be said to have suffered from the circumstances of the first trials in any way that would make it unfair to give the verdicts in these cases future effect. *See Parklane Hosiery Co. v. Shore*, 99 S.Ct. at 651–52.

■ The Court concludes that the circumstances in the present case are precisely those calling for use of estoppel. The use of a special verdict form removes any relevant doubt about the nature or substance of the jury's findings. And the pendency of as many as 147 other damage claims, all arising out of the same occurrence and all sharing claims that common forces caused common or similar injuries, calls for the use of principles that would limit costly and repetitive litigation. *Parklane Hosiery Co. v. Shore*, 99 S.Ct. at 649; *Blonder–Tongue Labs v. University Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). It is possible, of course, that if the potential effect of the forces were relitigated in each subsequent case, Lockheed might conceivably prevail on one or more occasion. But this prospect does not justify expenditure of judicial time and effort that the use of collateral estoppel would avoid. As the Supreme Court stated in *Blonder–Tongue Labs*:

> Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or 'a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.'

402 U.S. at 329, 91 S.Ct. at 1443. The defendant is entitled only to a full and fair opportunity to litigate its claim, *Blonder–Tongue Labs v. University Foundation*, 402 U.S. at 329, 91 S.Ct. at 1443; Lockheed has plainly had that chance. Nor is this a case where a court decision precludes a jury trial. Here jury verdicts *created* the estoppel against reiterated jury trials of issues already resolved by juries.

■ The arguments relied upon by Lockheed to oppose the use of estoppel are not persuasive. Defendant cites *McDonnell Douglas Corp. v. United States District Court*, 523 F.2d 1083 (9th Cir. 1975), for the proposition that tort claims of this type are

inappropriate for "class action" treatment. *McDonnell Douglas,* however, does not purport to address the question of collateral estoppel. The holding relied upon the defendants relates only to the construction of Rule 23, Fed.R.Civ.P., and is inapposite the issues presented here. Nor is Lockheed correct that collateral estoppel may not be used for issues relating to "damages" in tort. Throughout the first three trials, Lockheed has asserted the general principle that the forces associated with the crash were insufficient to cause injury to an infant. Although each individual plaintiff is clearly unique, and may suffer or claim different injuries from the crash, the question of whether the crash could cause MBD or similar injuries is plainly common to all the cases. The proof of causation introduced by both parties was directed not toward plaintiffs Marchetti and Schneider individually, but rather towards the susceptibility of infants sharing their basic characteristics to the conditions of the crash. The principle of collateral estoppel applies to "issues," not "causes of action," and its applicability is determined by examining the "single, certain and material point[s] arising out of the allegations and contentions of the parties." *Jackson v. District of Columbia,* at 953–954, *quoting, Paine & Williams Co. v. Baldwin Rubber Co.,* 113 F.2d 840, 843 (6th Cir. 1940). The issues identified by plaintiff meet this test.

Accordingly, for the purpose of the trial of *Reynolds v. Lockheed,* and in the comprehensive pretrial order governing the trials of all remaining claims of surviving infants, the parties shall adhere to the following principle:

> Neither Lockheed nor the Third–Party Defendant shall attempt to re–litigate, re–offer evidence, or re–argue, in the presence of the jury, whether there was insufficient hypoxia, force, psychological trauma, or explosive decompression in the troop compartment of the C5–A as to proximately cause neurological dysfunction (MBD) or proximately aggravate preexisting injury, disease, defect or disability.

## IV.

Plainly, the narrowing of issues to be tried will have an effect on the quantity, nature, and order of proof to be presented. Evidence that was admissible to demonstrate the forces connected with the crash, and thus that the crash was the proximate cause of plaintiffs' injuries, will not necessarily be relevant or admissible in the forthcoming trials. *See* Rule 401, Fed.R.Evid. These limitations will affect both parties.

To assist the parties in framing the issues for trial, the comprehensive pretrial order will incorporate a scenario for trial that, unless otherwise ordered by the ultimate trial court, will limit both the issues and the evidence consistent with the Court's finding. Subject to review by the trial judge, trial of the remaining cases could then follow a procedure substantially as follows:

1. The jury would be read a stipulation of facts incorporated into the pretrial order that will explain in detail the circumstances of the C5–A crash. The parties may add to this statement pertinent detail, such as a verbal description of the manner in which plaintiffs were seated in the troop compartment, that is relevant to the nature or degree of injuries that plaintiffs may now suffer.

2. The trial court would supplement these statements with a preliminary instruction that (a) the Defendant Lockheed Aircraft Corporation has agreed not to contest its liability for injuries resulting from the crash; and (b) the crash and the forces associated with it were sufficient to cause any brain injury, such as MBD, that plaintiff demonstrates that he now suffers.

3. Plaintiff's case in chief would be limited to evidence showing (a) that plaintiff now suffers or has suffered from brain injury or other physiological injury; and (b) the amount needed to compensate plaintiff for the effects of such injury. Such evidence would be limited to such testimony as the reports of expert medical witnesses who examined plaintiff, school teachers, and expert economic or other testimony showing the amount required to compensate for or

treat such disability. Evidence relating to the circumstances of the crash, including graphic testimony and visual descriptions of the crash and its aftermath, would be excluded.[2]

4. Defendants, in their case in chief, could respond with evidence either that (a) plaintiff does not suffer from any injury, or that such injury does not require the compensation demanded by plaintiffs; and/or (b) some or all of plaintiff's present medical condition is the result of causes other than the crash.

5. If defendant elects to attempt to prove that plaintiff's injuries were the result of an alternative cause, it may not introduce evidence tending to show that the crash was not sufficient to cause the injuries alleged, or adduce expert testimony based on that premise.

6. Additionally, if defendant elects to prove the existence of an alternative cause, plaintiff may, in rebuttal, introduce evidence–documentary, oral, or demonstrative–to prove that the forces associated with the crash were sufficiently severe that the crash was, more likely than not, the sole or substantial cause of plaintiff's injuries. This rebuttal evidence will be limited to items received in the trials heretofore concluded, unless otherwise ordered by the ultimate trial court.

7. Defendant should elect, at the time of the final pretrial conference, whether it will attempt to prove the existence of an alternative cause of plaintiff's injuries. This election, which would not take place until all discovery is complete, would permit plaintiff to secure, if necessary, the presence of rebuttal witnesses who would otherwise not be required.

The premise of this scenario is that the issue preclusion makes redundant and cumulative many items of evidence and as-

pects of testimony which were admissible before the verdicts which effected the preclusion. It is no longer necessary to prove what is now precluded. The scenario would thus serve several purposes. First, it may materially shorten the length of time required for each trial, and the substantial expenses attendant thereto. Second, where defendants elect not to prove the existence of an alternative cause, it will obviate the need for dramatic cumulative evidence about the circumstances of the crash that may have powerful emotional as well as probative effect. This evidence would otherwise be admissible. *See* Rule 403, Fed.R. Evid.

The scenario would strike a fair balance between the interests of the parties in a fair and efficient trial, protect the plaintiff against the trouble and expense of proving facts already established by jury verdict, and protect defendant against the inflammatory effect on a jury of photographs and word pictures now redundant to an understanding of the issues.

---

**2.** Plaintiff would, of course, be permitted to show that plaintiff suffered some other injury in the crash, such as a traumatic injury apparent at the time. However, proof of causation would not necessarily permit plaintiff to introduce evidence relating to all the circumstances of the crash. Particularly where the nexus between the crash and an alleged injury which

was readily observable on examination shortly after the crash is apparent, such as, for example, where a plaintiff contends he suffered a broken bone or contusions, little or no evidence relating to the circumstances of the crash would be appropriate beyond the stipulation of facts and the opening statement. *See* Rule 403, Fed.R.Evid.