ROBERT M. GRAHAM, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ROBERT M. GRAHAM AND BETTY JO GRAHAM, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6709–77, 9977–78.     Filed May 27, 1981.

*Robert F. Ashley*, for the petitioners.
*Richard D. Ames*, for the respondent.

OPINION

FEATHERSTON, *Judge*: Petitioners have filed a motion for summary judgment in these consolidated cases which involve deficiencies in Federal income taxes in the following amounts:

| Docket No. | Year | Amount |
|---|---|---|
| 6709–77 | 1972 | $78,095.45 |
| 6709–77 | 1973 | 134,277.55 |
| 6709–77 | 1974 | 155,993.97 |
| 9977–78 | 1975 | 40,926.84 |

The issue presented is whether respondent is collaterally estopped from contending that certain payments received by petitioners should be treated as ordinary income, rather than capital gain, pursuant to the provisions of section 1239.[1]

In the 1950's, Bette C. Graham (hereinafter Bette), former wife of petitioner Robert M. Graham (Robert), developed a secret formula for a typewriter correction fluid. In 1965, Robert and Bette formed the Liquid Paper.Corp. (LPC) to manufacture and market products using the secret formula, but the formula itself was not transferred to LPC at that time. On January 30, 1970, Bette transferred to LPC the secret formula "containing the organic system and the aqueous system used in the manufacture of the products known as Liquid Paper, Liquid Paper Special Match, Art Out, Mistake Out and Liquid Paper Pen." As consideration for the transfer, LPC obligated itself to pay Bette "royalties" amounting to 5 percent of the gross proceeds received from the sale of the products using the secret formula. At the time of the transfer, Bette owned 49 percent and Robert owned 40 percent of the LPC stock.

On their joint Federal income tax returns for 1972, 1973, and 1974, Robert and Bette reported the "royalty" payments that they received from LPC in those years as long-term capital gains.

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.

Robert and Bette were divorced on July 29, 1975. On October 10, 1975, Robert was married to Betty Jo Graham (Betty Jo). Robert and Betty Jo filed a joint Federal income tax return for 1975 on which they reported as capital gain the "royalties" that Robert received from LPC during that year.

Upon examination of the tax returns filed by Robert and Bette for 1972, 1973, and 1974, and by Robert and Betty Jo for 1975, respondent determined deficiencies based on a finding that the "royalty" payments from LPC were ordinary income rather than capital gain. In response, Robert filed the petition at docket No. 6709–77 with respect to 1972, 1973, and 1974. Subsequently, Robert and Betty Jo filed the petition at docket No. 9977–78 with respect to 1975. The cases have been consolidated upon a joint motion of the parties.

Shortly before Robert petitioned this Court with respect to the years 1972, 1973, and 1974, Bette paid the deficiencies determined by respondent for those years. She then filed a claim for refund for 1972.[2] Upon denial of that claim, she filed a suit for refund in the U.S. District Court for the Northern District of Texas. In her suit, she alleged that, as of January 1, 1970, she "transferred all of her interest" in the "secret formula by sale to * * * [LPC] * * * without reservation." On March 7, 1979, Judge Higginbotham for the U.S. District Court for the Northern District of Texas filed a memorandum opinion and order holding (1) that the transfer was a "sale" and (2) that the formula was not property which was, in the hands of the transferee, "subject to the allowance for depreciation provided in section 167." Judgment was filed pursuant to the order on March 16, 1979.

Petitioners' motion for summary judgment alleges that there is no genuine issue of fact or law to be litigated in these consolidated proceedings because all such issues have been decided adversely to respondent by virtue of the District Court judgment in Bette's refund suit. We agree.

Section 1239(a) provides as follows:

(a) TREATMENT OF GAIN AS ORDINARY INCOME.—In the case of a sale or exchange of property, directly or indirectly, between related persons, any gain recognized to the transferor shall be treated as ordinary income if such

---

[2]Although Bette paid the deficiencies determined by respondent for 1973 and 1974, for some unexplained reason, she did not file a claim for refund for those years.

property is, in the hands of the transferee, of a character which is subject to the allowance for depreciation provided in section 167.

In the District Court case, the Government contended that Bette's receipts from LPC should be treated as ordinary income on the grounds that (1) the transfer of the secret formula to LPC was not a sale and (2), even if the transfer was a sale, section 1239 forbade capital gain treatment because the secret formula was property which was subject to the allowance for depreciation. The District Court, as noted above, rejected both arguments. Specifically, the District Court found that Bette had parted with all substantial rights in the formula and that LPC was granted the right to disclose the formula. Accordingly, the court held that Bette had sold the formula to LPC. The court further held, in the light of expert and other testimony reviewed in its opinion, that the formula was not subject to the allowance for depreciation because it was not a "wasting asset whose useful life could be measured with reasonable accuracy." On the basis of these and other findings, the District Court held that Bette was entitled to treat the proceeds of the transfer as long-term capital gain.

We think the judgment of the District Court collaterally estops respondent from relitigating the same issues in the instant case. In *Montana v. United States*, 440 U.S. 147, 153–154 (1979), where the United States had financed and controlled litigation instituted in a State court by one of its public contractors, and it was held that the United States was bound by the judgment rendered in that prior litigation, the Supreme Court explained:

Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. * * * To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. [Fn. ref. omitted.]

See also *Blonder-Tongue v. University Foundation*, 402 U.S. 313, 328–329 (1971); *Commissioner v. Sunnen*, 333 U.S. 591, 597–602 (1948); *Cromwell v. County of Sac*, 94 U.S. 351, 352–353 (1876). The issues in the instant case are precisely the same as those actually and necessarily determined in the District Court in the

suit for refund brought by Bette. Indeed, they stem from a joint notice of deficiency issued to Robert and Bette for 1972, 1973, and 1974. Although the notice for 1975 was mailed to Robert and Betty Jo, as a consequence of Robert's divorce and remarriage, it nonetheless raises precisely the same issues with respect to the same secret formula and the same contract as were involved in the earlier years (with the exception, as we shall discuss, of an alternative determination based on section 483). The United States was a party to the refund suit in the District Court and had a full and fair opportunity to litigate its position. We hold that respondent is estopped by the District Court judgment. Compare *Starker v. United States*, 602 F.2d 1341, 1344–1350 (9th Cir. 1979).

It is true, as respondent emphasizes, that Robert is the moving party in this Court and seeks to "offensively" use the District Court judgment to serve his cause even though he was not a party to the refund suit. In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), the Supreme Court pointed out that permitting such "offensive" use of collateral estoppel may increase the total amount of litigation by discouraging potential plaintiffs from joining or intervening in the first action brought by another similarly situated plaintiff and that, in some circumstances, it may be unfair to a defendant. Nevertheless, the Court approved the use of offensive collateral estoppel on these terms (439 U.S. at 331):

> We have concluded that the preferable approach * * * is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where * * * the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel. [Fn. ref. omitted.]

See, e.g., *Starker v. United States, supra; Bank of Heflin v. Landmark Inns of America*, 604 F.2d 354 (5th Cir. 1979); *Vela v. Alvarez*, 507 F. Supp. 887 (S.D. Tex. 1981); *Friends for All Children v. Lockheed Aircraft*, 497 F. Supp. 313, 317–318 (D.D.C. 1980); all applying offensive collateral estoppel. Cf. *Olegario v. United States*, 629 F.2d 204, 214–215 (2d Cir. 1980), where the court refused to apply offensive collateral estoppel.

Respondent, accusing Robert of forum shopping, argues that collateral estoppel should not be applied here because Robert

could have joined Bette in the District Court suit, but chose not to do so. The facts are, however, that the joint notice of deficiency for 1972, 1973, and 1974, was issued on May 13, 1977, after Robert and Bette were divorced.[3] Bette paid the determined deficiency on or about May 25, 1977, and filed a claim for refund for 1972 on or about the same date. On June 23, 1977, the claim for refund was rejected, and her complaint in the refund suit was filed on July 8, 1977. Prior to the commencement of the refund suit, however, on June 29, 1977, Robert had filed his petition at docket No. 6709–77.

There is no evidence by way of affidavit in opposition to the motion or in any other form of any agreement between Robert and Bette that he would take his case to the Tax Court and she would pay the 1972 tax and sue in the District Court for a refund. When Bette filed her District Court suit, it was too late for Robert to join as a party. Once Robert had filed a petition in the Tax Court, the District Court could not have entertained a refund suit instituted by him with respect to the same taxes, and it is doubtful that he could have joined in the refund suit subsequently commenced by Bette. See sec. 6512(a); *Estate of Ming v. Commissioner*, 62 T.C. 519, 521 (1974), and cases cited therein. Moreover, had Robert attempted to dismiss his Tax Court petition, a decision sustaining the deficiencies would have been entered against him. Sec. 7459(d).

We think this is an appropriate case for applying collateral estoppel. As previously noted, the Government has had a full and fair opportunity to litigate its position. The District Court held that the transaction between Bette and LPC was a sale and that the secret formula was not property subject to depreciation. Given these established facts, it is clear that the royalties received by Robert in each of the years before this Court are taxable as capital gain, not ordinary income.

Respondent next argues that, if the Court should conclude that this case is a proper one in which to apply collateral estoppel, respondent should be estopped only as to Robert's liability for 1972, the year covered by the District Court case. Respondent maintains that the secret formula may have acquired an ascertainable useful life in one of the years subsequent

[3]The record does not show whether a deficiency was determined against Bette for 1975.

to 1972. To support this contention, he points to a pretrial submission made by LPC in a refund suit in the Court of Claims in which LPC contends in part that the secret formula has a determinable useful life and that the "royalties" paid under Bette's contract with LPC represent a reasonable allowance for depreciation (or amortization) and are deductible as such.

Respondent correctly points out that collateral estoppel does not apply if the controlling facts or legal principles in a year subsequent to the one litigated have changed. *Commissioner v. Sunnen, supra* at 599–600. Cf. *Starker v. United States, supra* at 1346. However, respondent does not face up to the fact that the Government evidently argued in the refund suit that, even though the useful life of the secret formula could not be measured in 1970, it may have been subject to measurement at the time the refund suit was filed. The District Court stated as follows:

> The plaintiff has shown that the formula involved here falls within the general rule that secret processes are not depreciable. First, the secret formula *is not now and was not in 1970* an inherently wasting asset. Indeed, its useful life is limited only by the success of LPC's efforts to maintain its secrecy and by technological developments that might make it obsolete. But there is no way to determine with reasonable accuracy when the formula might become obsolete or when the formula might be discovered by others. Indeed, this determination was even more speculative in 1970 when correcting typewriters had not been introduced. Nonetheless, it need not be determined here whether depreciability is to be measured at the time of the transfer or at the date of the filing of a suit for refund; viewed from either perspective, the secret formula involved here is not depreciable, for at no time has it been an inherently wasting asset whose useful life could be measured with reasonable accuracy.
> * * *
>
> *       *       *       *       *       *       *
>
> This court finds, then, that the secret process sold by Ms. Graham to LPC in 1970 *does not now and did not in 1970* have a limited useful life that can be determined with reasonable accuracy. * * *
>
> [Emphasis added.]

Thus, if the focus is on 1970, when the sale to LPC occurred, the District Court has adjudicated the matter. If the focus is on the facts as they existed in each of the years 1972, 1973, 1974, and 1975, here in controversy, the District Court has also answered that question by finding that the secret formula "does not now [in 1978] * * * have a limited useful life that can be determined with reasonable accuracy."

Lest there be misunderstanding as to the rule to be followed,

the law appears to be settled that, under section 1239(a), the issue as to whether the property is of a character which is subject to the allowance for depreciation in the hands of the transferee is to be resolved as of the date of the sale. In *Lan Jen Chu v. Commissioner*, 486 F.2d 696, 702 (1st Cir. 1973), affg. 58 T.C. 598 (1972), after a review of the legislative history of section 1239, the court rejected an argument that the section requires ordinary income treatment of gain from the disposition of property of a type which may ultimately become depreciable, stating: "We * * * conclude that when section 1239 is considered in the light of its apparent policies and the legislative history that coincided with its passage, it becomes clear that this section is applicable strictly to the transfer of depreciable property." In *Estate of Stahl v. Commissioner*, 442 F.2d 324, 328 (7th Cir. 1971), affg. in part and revg. in part 52 T.C. 591 (1969), and in *Myers v. United States*, 613 F.2d 230, 232 (9th Cir. 1980), the courts held that section 1239 required ordinary income treatment of gain received from the disposition of patents as well as applications for patents with respect to which "notices of allowability" (as distinguished from the patents themselves) had been issued "prior to the sale." In both cases, the courts determined the issue as to the depreciability of the property as of the time of the sale. Both opinions proceed from the implicit premise that section 1239 does not preclude capital gain treatment of income received from the disposition of property merely because the property may ultimately become depreciable. See also *Davis v. Commissioner*, 491 F.2d 709 (6th Cir. 1974), affg. per curiam a Memorandum Opinion of this Court.

We conclude that the section 1239 issue has been litigated and resolved. Respondent is collaterally estopped from relitigating that issue for the years in controversy, and petitioners' motion for summary judgment must be granted as to that issue.

In the notice of deficiency for 1972, 1973, and 1974 (docket No. 6709–77), the following alternative determination was made:

> If it is held that the payments do constitute amounts received from sale of a capital asset, then net capital gains reported should be reduced by $12,215.49, $29,248.49, and $46,910.49 for the respective tax years 1972, 1973, and 1974, and ordinary income reported should be increased by $24,431.00, $58,497.00, and $93,821.00 for the respective tax years because such amounts constitute imputed interest income under Section 483 of the Internal Revenue Code.

No similar alternative determination was made with respect to

1975 (docket No. 9977–78). The petition in docket No. 6709–77 alleges that this determination was erroneous, and the motion for summary judgment asks for relief with respect to it. Respondent's objection to petitioner's motion mentions this alternative determination as an issue but does not present any reasons or facts (by way of affidavit, see Rule 121(d), Rules of Practice and Procedure of this Court, or otherwise) with respect to this issue in stating his opposition to the motion. Nor does respondent's brief mention the issue. We note that the District Court opinion states that this "contention has been dropped by the government." Accordingly, we treat it as abandoned, as it was in the District Court. Petitioners' motion for summary judgment will be granted, and

*Decision will be entered for the petitioners.*